SERVICE MERCHANDISE COMPANY, INC., Appellant,

v.

George M. TIDWELL, Commissioner of Revenue, State of Tennessee, Appellee.

Supreme Court of Tennessee.

Oct. 27, 1975.

Stewart F. Kresge, Snodgrass & Kresge, Nashville, for appellant.

R. A. Ashley, Jr., Atty. Gen., William B. Hubbard, Asst. Atty. Gen., Nashville, for appellee.

## OPINION

COOPER, Justice.

This appeal is from the decree of the Chancery Court of Davidson County dismissing the action brought by Service Merchandise Company, Inc., to recover use taxes, together with interest and penalty thereon, paid to the State of Tennessee under protest. The primary issue presented is whether the transactions on which the

taxes were assessed were interstate commerce and thus specifically exempted from taxation by T.C.A. Section 67-3007.

The use taxes involved in this action were assessed on the value of printed material (catalogues, supplements, and flyers) which Service Merchandise Company, Inc., a Tennessee corporation, furnished its customers at no charge and upon request of the customers. The printed material was prepared and coordinated for publication pursuant to a contract between appellant and Creative Merchandising and Publishing, Inc., a Minnesota corporation. Creative Merchandising had the catalogues and supplements printed by either the Midwest Printing Company or Brown Printing Company, both Minnesota corporations. Upon completion of the printing process in Minnesota, the material was transported by one of the following methods to individuals who had requested it:

1. The printer affixed a label containing the recipient's name and address to each piece of printed material, packaged it according to fourth class postal regulations, and carried it to a United States post office in Minnesota for delivery through the mail to the addressee.

2. The printer affixed a label containing the recipient's name and address to each piece of printed material, packaged it according to fourth class postal regulations, and hired a common carrier to truck the printed material to regional United States post offices in Tennessee where it was unloaded by postal employees and delivered through the mail to the addressee.

3. The printed material was trucked by common carrier from the printer in Minnesota to Reo Packaging Company in Chicago, Illinois. Reo wrapped and sealed each piece in clear plastic, affixed a label containing the recipient's name and address, packaged it according to fourth class postal regula-

tions, and hired a common carrier to truck the printed material to regional United States post offices in Tennessee where it was unloaded by postal employees and delivered through the mail to the addressee.

Use taxes were assessed for the years 1970 through 1973 on the printed material trucked by common carrier to the docks of regional post offices in Tennessee and then entered into the United States mail for delivery to the recipients, the second and third categories of shipments set out above.[1] The state took the position that:

(1) the interstate journey of the printed material which was ultimately delivered to Tennessee residents was terminated when the items reached the postal docks in Tennessee; and

(2) that even as to the printed material which was ultimately delivered to individuals outside the State of Tennessee, there was a sufficient break in the interstate journey to allow taxation.

The chancellor sustained the use tax assessments by holding that "[t]here was a break or pause in the interstate journey that allowed the state to impose a use tax when the catalogues reached the Tennessee post office docks." The theory behind the chancellor's holding, and as argued by appellee, is that once the printed material reached the postal docks in Tennessee, appellant, described as the "mailer," exercised control over it by distributing it to potential customers, and that the act of distribution was a taxable event.

On appeal, Service Merchandise insists (1) that goods transported in interstate commerce are not subject to taxation until that interstate commerce has terminated, and (2) that the facts of this case reveal merely a change in the mode of transportation of the goods and that such an event is insufficient

---

1. Although the delivery zones of the regional post offices in Chattanooga and Memphis presumably extend beyond the State of Tennessee, there is no evidence in the record indicating the percentage of printed material which in fact was mailed to individuals outside of Tennessee. However, we do not consider the presence or absence of that evidence a critical factor in the determination of this controversy.

to terminate the interstate commerce character of the transaction.

■ We agree with appellant's contention that the interstate character of the transactions in question here did not terminate at the postal docks. In *Illinois Central RR. v. Fuentes,* 236 U.S. 157, 35 S.Ct. 275, 59 L.Ed. 517 (1915), the United States Supreme Court made the following observations about the interstate character of commerce:

> "When freight actually starts in the course of transportation from one state to another it becomes a part of interstate commerce. The essential nature of the movement and not the form of the bill of lading determines the character of the commerce involved. *And generally when this interstate character has been acquired it continues at least until the load reaches the point where the parties originally intended that the movement should finally end."* Id. at 163, 35 S.Ct. at 276 (emphasis added).

The parties to the interstate commerce transaction in the present case clearly intended that movement of the printed material would not terminate until reaching its ultimate destination, the mailboxes of the recipients. *See also Binderup v. Pathé Exchange,* 263 U.S. 291, 44 S.Ct. 96, 68 L.Ed. 308 (1923); *Western Oil Refining Co. v. Lipscomb,* 244 U.S. 346, 37 S.Ct. 623, 61 L.Ed. 1181 (1917).

■ A determination that interstate commerce does not terminate until the goods reach the final destination intended by the parties does not dispose of the question of taxability in this case, however. A sufficient break at intermediate points in the continuity of interstate transit of goods will allow state taxation of those goods. The issue then is was the delivery of the printed material to the postal docks in Tennessee a sufficient break in interstate commerce to permit the State of Tennessee to collect a use tax on the printed material. *See General Oil Co. v. Crain,* 209 U.S. 211, 28 S.Ct. 475, 52 L.Ed. 754 (1908). Certain well-established principles drawn from United States Supreme Court cases dealing with the question of state taxation of interstate commerce provide substantial guidance in determining this issue.

■ It is fundamental that states may not levy a tax on goods which are in transit in interstate commerce. *Hughes Bros. Timber Co. v. Minnesota,* 272 U.S. 469, 47 S.Ct. 170, 71 L.Ed. 359 (1926); *Coe v. Errol,* 116 U.S. 517, 6 S.Ct. 475, 29 L.Ed. 715 (1886). *See also* T.C.A. Section 67–3007. To avoid the possibility of state taxation, however, practical continuity of transit must exist. *Carson Petroleum Co. v. Vial,* 279 U.S. 95, 49 S.Ct. 292, 73 L.Ed. 626 (1929). The general principles governing the question of a break in the interstate continuity of transit are succinctly stated by the Court in *Minnesota v. Blasius,* 290 U.S. 1, 54 S.Ct. 34, 78 L.Ed. 131 (1933):

> "If the interstate movement has begun, it may be regarded as continuing, so as to maintain the immunity of the property from state taxation, despite temporary interruptions due to the necessities of the journey or for the purpose of safety and convenience in the course of the movement . . .. Formalities, such as the forms of billing, and mere changes in the method of transportation do not affect the continuity of transit. The question is always one of substance, and in each case it is necessary to consider the particular occasion or purpose of the interruption during which the tax is sought to be levied . . .. The mere power of the owner to divert the shipment already started does not take it out of interstate commerce if it appears 'that the journey has already begun in good faith and temporary interruption of the passage is reasonable in furtherance of the intended transportation.'" Id. at 9–10, 54 S.Ct. at 37, quoting *Hughes Bros. Timber Co. v. Minnesota,* 272 U.S. 469, 476, 47 S.Ct. 170, 71 L.Ed. 359 (1929).

■■ The question thus becomes what purpose or occasion will subject property

temporarily halted in its interstate journey to taxation by the local jurisdiction. As suggested in *Minnesota v. Blasius, supra,* if the temporary interruption in actual transit is merely incidental to the interstate journey—i. e., necessary to further the movement—the property is not subject to taxation. *See Michigan-Wisconsin Pipe Line Co. v. Calvert,* 347 U.S. 157, 74 S.Ct. 396, 98 L.Ed. 583 (1954); *Joseph v. Carter & Weekes Stevedoring Co.,* 330 U.S. 422, 67 S.Ct. 815, 91 L.Ed. 993 (1947); *Carson Petroleum Co. v. Vial,* 279 U.S. 95, 49 S.Ct. 292, 73 L.Ed. 626 (1929); *Hughes Bros. Timber Co. v. Minnesota,* 272 U.S. 469, 47 S.Ct. 170, 71 L.Ed. 359 (1929); *Champlain Realty Co. v. Brattleboro,* 260 U.S. 366, 43 S.Ct. 146, 67 L.Ed. 309 (1922). On the other hand, property may be subject to taxation if the temporary interruption is "not in necessary delay or accommodation to the means of transportation . . . but for the business purposes and profit of the [taxpayer]." *General Oil Co. v. Crain,* 209 U.S. 211, 230–31, 28 S.Ct. 475, 482, 52 L.Ed. 754 (1908). *See Independent Warehouses v. Scheele,* 331 U.S. 70, 67 S.Ct. 1062, 91 L.Ed. 1346 (1947); *Minnesota v. Blasius,* 290 U.S. 1, 54 S.Ct. 34, 78 L.Ed. 131 (1933); *Nashville, C. & St. L. Ry. v. Wallace,* 288 U.S. 249, 53 S.Ct. 345, 77 L.Ed. 730 (1933); *Susquehanna Coal Co. v. City of South Amboy,* 228 U.S. 665, 33 S.Ct. 712, 57 L.Ed. 1015 (1913); *Bacon v. Illinois,* 227 U.S. 504, 33 S.Ct. 299, 57 L.Ed. 615 (1913); *Pittsburg & So. Coal Co. v. Bates,* 156 U.S. 577, 15 S.Ct. 415, 39 L.Ed. 538 (1895); *Brown v. Houston,* 114 U.S. 622, 5 S.Ct. 1091, 29 L.Ed. 257 (1885).

The cases cited above allowing state taxation of property temporarily halted in its interstate journey involve situations in which the property was held (generally in storage) by the taxpayer for processing, use, or distribution as his business interests dictated. Although further interstate movement of the property was contemplated by the parties, the ultimate destination of the property was generally unknown at the time of the interruption in transit. In *Susquehanna Coal Co. v. City of South Amboy,* 228 U.S. 665, 33 S.Ct. 712, 57 L.Ed. 1015 (1913), for example, coal was held in storage for the purpose of filling *anticipated* orders of standing customers.

The facts of the present case are distinguishable from those in which taxation has been upheld. In the first place Service Merchandise never took physical possession of the printed material in question; it did not exercise any control over the printed material. In fact, the only control which Service could have exercised was to retrieve the printed material at the postal docks. The record reveals, however, that Service only exercised that control in the case of damaged catalogues.

■ Appellee argues that the act of mailing the printed material is a sufficient exercise of control to allow imposition of the use tax. We must reject that argument on the ground that the act of mailing is integrally related to the actual movement in interstate commerce. In *Michigan-Wisconsin Pipe Line Co. v. Calvert,* 347 U.S. 157, 74 S.Ct. 396, 98 L.Ed. 583 (1954), the United States Supreme Court said:

"It is now well settled that a tax imposed on a local activity related to interstate commerce is valid if, and only if, the local activity is not such an integral part of the interstate process, the flow of commerce, that it cannot realistically be separated from it." *Id.* at 166, 74 S.Ct. at 401.

■ The facts of the present case also indicate that the ultimate destination of the printed material was fixed from the moment it entered the stream of interstate commerce. The record reveals that a pre-addressed label was affixed to the printed material before it commenced its interstate journey. Thus, it was at all times the intention of the parties to this interstate transaction that movement of the printed material would not cease until it reached the ultimate recipient. Indeed the only purpose of the entire transaction was to insure the safe and convenient delivery of

**220**

the printed material to the ultimate recipient. In short, the interstate transit of these items did not end at the postal docks in Tennessee, nor was it temporarily interrupted to serve the business interests of Service Merchandise.

◼ Appellee makes the argument that the temporary interruption in interstate transit at the postal docks in Tennessee operated to promote the business interest of Service Merchandise by allowing Service to take advantage of the less expensive local postage rates. While it is true that some printed material was mailed directly from United States post offices in Minnesota and that no use tax was imposed on it (the first category of delivery described above), there is contradictory evidence in the record as to whether that method of delivery was in fact more expensive. We do not, however, consider the expense factor relevant to the determination of whether a sufficient break in interstate transit has occurred in this case. In *Kelley v. Rhoads,* 188 U.S. 1, 23 S.Ct. 259, 47 L.Ed. 359 (1903), the Supreme Court held that although another means of transportation was available which would have avoided a stop in the taxing state, the taxpayer was free to choose the least expensive method without thereby necessarily subjecting the property to taxation. *See Champlain Realty Co. v. Brattleboro,* 260 U.S. 366, 43 S.Ct. 146, 67 L.Ed. 309 (1922).

◼ We hold, therefore, that the temporary interruption in the interstate transit of the printed material in this case was solely for the purpose of promoting the continuing movement of the printed material in its journey to the ultimate recipients. The break in actual transit in this case must be viewed simply as a change in the mode of transportation from common carrier to the United States mail. Thus, the break was merely incidental to the journey and cannot be sufficiently separated from the actual movement in interstate commerce.

It follows that appellant is entitled to recover the use taxes, penalties, and interest paid under protest and the subject of this action. Accordingly, the decree of the chancellor dismissing appellant's action is reversed. Judgment will be entered in this court for appellant in the amount of $37,-447.92, with interest thereon from the date of payment by appellant of the use tax wrongfully assessed by the State of Tennessee.

FONES, C. J., and HENRY, BROCK and HARBISON, JJ., concur.