**Jayne Ann WOODS, Commissioner of Revenue for the State of Tennessee, Plaintiff-Appellant,**

v.

**The M. J. KELLEY COMPANY, Defendant-Appellee.**

Supreme Court of Tennessee.

Jan. 14, 1980.

William M. Leech, Jr., Atty. Gen., Joe C. Peel, Asst. Atty. Gen., Nashville, for plaintiff-appellant.

John C. Speer, Heiskell, Donelson, Adams, Williams & Kirsch, Memphis, for defendant-appellee.

OPINION

HENRY, Justice.

The question before the Court is whether an out-of-state contractor[1] doing business in Tennessee should be liable for a use tax on materials which it caused to be delivered to a construction site in Memphis, where they were installed by labor subcontractors, pursuant to contracts with the out-of-state contractor.

We conclude that the contractor has used these materials in Tennessee in such a manner that it is liable under Sections 67–3001, *et seq.*, T.C.A., for the use tax assessed by the Tennessee Department of Revenue.

I.

From May 1973 through March 1975, the appellee, The M. J. Kelley Company, was acting as a contractor[1] on a project involving the construction of a bulk mail facility at Memphis. Kelley, a mechanical contractor incorporated in Ohio, had bid and obtained the contract for the mechanical portion of the job. Kelley's portion of the job involved the plumbing, heating, air conditioning and sprinkler work on the building.

In order to fulfill its contractual obligations Kelley entered into several subcontracts for materials and labor needed to complete the mechanical phase of the construction job. We concern ourselves primarily with Kelley's subcontracts with North American Mechanical, Inc., and Delta Mechanical Contractors, Inc., both of Memphis.

1. The appellee, The M. J. Kelley Company was a *second-tier subcontractor on this construction project. For the sake of convenience,* however, Kelley will be referred to as the contractor and North American and Delta, third-tier subcontractors, as subcontractors.

Kelley, following its usual practice of hiring local subcontractors to do the work, contracted with North American and Delta to install the materials which Kelley was to supply.[2] North American Mechanical was to install the duct work, and both North American and Delta were to install plumbing and heating materials provided by Kelley. North American and Delta were to perform the work in accordance with the specifications and plans to the satisfaction and acceptance of Kelley and the owner. Kelley itself was responsible for having the materials meet specifications.

To meet the material needs of the job, Kelley engaged material subcontractors to manufacture and fabricate the materials necessary to carry out the project. For example, Kelley had a contract with Hodous and Friedman for sheet metal fabrication; Kelley directed that these materials be delivered to it at the Hodous and Friedman factory and agreed to reimburse Hodous and Friedman for loading the materials on Kelley trucks. The majority of the materials for the project in Memphis were purchased by Kelley out of state. No sales tax was paid on these materials. On those materials purchased in Tennessee, Tennessee sales tax was paid; they are not involved in this controversy. Destination and mode of delivery of the materials varied.

Kelley originally agreed to unload the materials in Memphis and move them to the bay in the building where they were to be installed by the subcontractors. The subcontractors' contracts were to begin at that point. Kelley's Project Administrator, Raymond Zetts, testified, however, that North American personnel actually unloaded the materials.

Kelley also provided, pursuant to its contracts with North American and Delta, rigging, scaffolding and "related type services" necessary for the project.

Near the completion of the project North American, Delta and Kelley became involved in a labor dispute. Kelley had reserved in its contracts with North American and Delta the right to discharge these labor subcontractors should their work not be satisfactory. Both North American and Delta left the job. Kelley then employed local union personnel and finished the project. The materials that Kelley used in completing the project after terminating North American and Delta were assessed and this portion of the tax assessment is not disputed.

Throughout the project Kelley maintained a staff at the site, including the project manager, a secretary and sometimes an assistant. The function of this small staff was the oversight and coordination of the work of the subcontractors and the processing of necessary paper work.

## II.

In May 1975 personnel from the State Department of Revenue conducted an audit at Kelley's office in Cleveland, Ohio. Kelley's records showed that the materials it needed for the bulk mailing facility project were purchased primarily from out-of-state vendors. In some instances the materials were delivered to Kelley in Cleveland and no sales or use tax was charged. On the material that was shipped directly to Tennessee, if the vendor was registered in Tennessee, the Tennessee tax was paid. If the vendor was not registered in Tennessee, no tax was paid.

The audit did not include items upon which Kelley had paid Tennessee sales tax. Certain adjustments were made to the audit, and the final use tax liability of Kelley was determined to be forty-five thousand nine hundred seventy-five and 75/100 dollars ($45,975.75). Kelley refused to pay this assessment.

---

2. Certain of the subcontracts made by Kelley were for both labor and materials. For example, Erie View Insulation Company provided all labor and materials in connection with insulation of the building. On a contract such as this, where the third-tier subcontractor was responsible for obtaining his own materials and thus had the records on the cost of these items, the State Department of Revenue collected the use tax from the subcontractor, Erie, and not from Kelley.

The State Department of Revenue then filed a tax lien and ultimately brought this suit pursuant to Section 67–6032(a), T.C.A., to collect the use tax, interest and penalty.

After the hearing, the Chancellor entered a memorandum opinion in which he held that Kelley's tax liability was limited to those materials which were installed under Kelley's direct supervision of local union labor hired after Kelley terminated North American and Delta. The Chancellor found that Kelley was not liable for the use tax assessed on those materials purchased and imported by Kelley if the materials were installed by the subcontractors hired by Kelley.

The State Department of Revenue appeals the Chancellor's decision. The State maintains, and we agree, that the Chancellor's decision would narrow the application of the use tax to those instances in which the taxpayer physically manipulated the tangible personal property in question. Appellee Kelley responds that the Chancellor has not so narrowed the application of the use tax but instead has reiterated a fundamental element of the use tax that the taxpayer itself must use the materials before liability for the tax attaches.

### III.

█ The use tax is a compensating tax, designed to prevent the avoidance of sales taxes and ensure that Tennessee manufacturers and merchants remain on equal competitive footing with nonresidents who enter this state to do business. *Broadacre Dairies, Inc. v. Evans*, 193 Tenn. 441, 246 S.W.2d 78 (1952). Taken together, the sales and use taxes provide a uniform scheme of taxation on goods (tangible personal property) purchased within the state and goods purchased outside the state for "storage, use, or consumption" within the state. *Broadacre Dairies, supra. See also, Henneford v. Silas Mason Co., Inc.*, 300 U.S. 577, 57 S.Ct. 524, 81 L.Ed. 814 (1936).

█ Broadly speaking, the use tax is a tax "on the enjoyment of that which was purchased, after a sale has spent its interstate character." *McLeod v. Dilworth*, 322 U.S. 327, 64 S.Ct. 1023, 88 L.Ed. 1304 (1943). More specifically, the use tax is a tax on the "privilege of using, consuming, distributing or storing tangible personal property after it is brought into this State from without this State." *Broadacre Dairies*, 193 Tenn. at 444–45, 246 S.W.2d at 79. This definition is fairly uniform throughout the states. *See* 68 Am.Jur. Sales and Use Taxes § 171 (1953). Thus, it was the legislative intent, as manifested in Section 67–3005, T.C.A., to impose a use tax on all tangible personal property imported from other states and used and consumed in this state, provided a similar tax, equal to or greater, has not been paid in the exporting state. *Young Sales Corp. v. Benson*, 224 Tenn. 88, 450 S.W.2d 574 (1970).

Liability for the tax may attach under two statutory sections. Under Section 67–3004, T.C.A., a contractor or subcontractor is liable for the use tax when he uses tangible personal property in the performance of his contract or to fulfill his contractual obligations. Section 67–3005, T.C.A., among other things, makes a "dealer" liable for the use tax on all tangible personal property he imports, or causes to be imported, and uses in this state.

Section 67–3016, T.C.A., provides that the tax is collectible from all persons engaged as dealers, as defined in Section 67–3017, T.C.A., to include "every person, as used in this chapter, who imports or causes to be imported, tangible personal property from any state . . . for use, or consumption, or distribution, or for storage to be used or consumed in this state." The clear intent of the statutory scheme is to tax to the fullest extent permitted by the Commerce Clause, Article 1, Section 8 of the United States Constitution. *Texas Eastern Transmission Corp. v. Benson*, 480 S.W.2d 905 (Tenn.1972). Goods moving in interstate commerce are exempt from the imposition of the tax. Section 67–3007, T.C.A.; *McLeod v. Dilworth, supra.*

Use is just one of the many rights contained in the bundle of rights known as ownership. *Henneford, supra.* This

scheme of taxation is meant to encompass much more than simple title to and possession of the tangible personal property. The State has the power to tax storage of goods ultimately used in Tennessee. *Beecham Laboratories v. Woods*, 569 S.W.2d 456 (Tenn.1978). Rental or lease of tangible personal property is a taxable event to which the use tax applies. *Crescent Amusement Co. v. Carson*, 187 Tenn. 112, 213 S.W.2d 27 (1948) (film prints rented for use in state). Installation of materials pursuant to a contract with a tax-exempt organization is taxed to the contractor who uses and installs those materials to fulfill his contractual obligation. *General Carpet Contractors, Inc. v. Tidwell*, 511 S.W.2d 241 (Tenn.1974).

■■■ The concept of use has not been confined to physical manipulation of the property. The taxable privilege of use extends to the "utilization of property for profit-making purposes." *See, e. g., Union Oil Co. of California v. State Bd. of Equalization*, 34 Cal.Rptr. 872, 386 P.2d 496 (1963). Also taxable is the "power to allow property one owns to be used for one's benefit," for this is an "exercise" of " 'an incident of ownership' under the Act." *Miller Brewing Co. v. Korshak*, 35 Ill.2d 86, 219 N.E.2d 494, App.Dismd. 386 U.S. 684, 87 S.Ct. 1325, 18 L.Ed.2d 405 (1966).

Especially illustrative of the utilization of property for profit-making purposes as an exercise of a taxable privilege is *Plowden & Roberts, Inc. v. Porterfield*, 21 Ohio St.2d 276, 257 N.E.2d 350 (1970). The facts of that case closely parallel the case at bar. The taxpayer was a South Carolina corporation which had contracted with a nonresident owner of Ohio real estate to construct a steel framework for a warehouse on the Ohio property. Pursuant to the contract, the nonresident contractor purchased the steel for the framework from sellers outside Ohio. These sellers delivered the steel on their trucks or by common carrier to the area where the warehouse was to be built. The taxpayer then subcontracted the unloading and erecting of the steel to a North Carolina corporation. This corporation in turn subcontracted these tasks to an Ohio company. On these facts the Ohio Court held the nonresident contractor liable for the use tax on the steel.

The taxpayer in *Plowden, supra*, was considered a consumer under Section 5741.01, Page's Ohio Rev.Code Ann.:

(F) "Consumer" means any person who has purchased tangible personal property for storage, use, or other consumption in this state.

Under Section 5741.02, Page's Ohio Rev. Code Ann., a consumer, as defined above, is liable for the use tax.

The Ohio Court reasoned as follows:

The law is clear that a person who has acquired from an out-of-state supplier tangible personal property for a consideration for storage, use or consumption in this state is liable for the use tax.

It is undisputed that [the consumer] purchased steel for use in the construction of a warehouse in Ohio. That steel was delivered in Ohio and was used for the purpose for which it was purchased.

The steel was delivered and came to rest in the State of Ohio before the tax was levied. Thus, at the time it was delivered and came to rest in Ohio, any previous attributes of interstate commerce which may have attached to the steel in transit were ended. (citations omitted)

The authority for Ohio to assess a use tax against nonresidents based upon an agreement made outside Ohio for materials to be delivered in Ohio and used for the construction of a warehouse in Ohio was settled by this Court in *Rochez Bros. v. Bowers*, (1957), 166 Ohio St. 396, 400, 143 N.E.2d 123, and *Tri-City Broadcasting Co. v. Bowers*, (1959), 169 Ohio St. 126, 158 N.E.2d 203. (other citations omitted)

257 N.E.2d at 353

The similarity between the Ohio and Tennessee statutes significantly underlines the importance of the holding in *Plowden, supra*, to the case at bar. The relevant portion of the Tennessee statute defines a dealer as one

who imports or causes to be imported, tangible personal property from any state or foreign country, for sale at retail, for use, or consumption, or distribution, or for storage to be used or consumed in this state.

Section 67–3017, T.C.A.

Unlike the Ohio statute, our statute does not require a purchase, but the effect of the two statutory sections is the same. A person who brings in materials from out-of-state to be used in this state is liable for a use tax.

## IV.

Kelley had fabricated and delivered to the Memphis construction site the materials needed by North American and Delta to complete its subcontracts with Kelley. The materials were delivered, and came to rest within the state. They were unloaded and installed pursuant to Kelley's contracts with North American and Delta. Thus, this tangible personal property, brought into this state for use in construction here, became a part of the "the mass of property in this state." Section 67–3007, T.C.A.

Kelley used these materials to fulfill its contractual obligations. This use is a utilization of tangible personal property within the state for profit-making purposes and for the benefit of nonresident contractor Kelley. When a contractor brings in materials from outside the state for use in this state on a project which benefits and profits that contractor, it has used the materials in such a way that it must be liable for the use tax. The language and intent of both Sections 67–3004 and 67–3005, T.C.A., are broad enough to encompass this situation and subject this taxpayer to liability for the use tax assessed. We find that liability for this taxpayer, primarily, is established by Section 67–3004, T.C.A., which is addressed specifically to the application of tangible personal property by a contractor or subcontractor.

Also subject to the use tax is the leased equipment. Kelley leased scaffolding and rigging, again pursuant to its contracts with North American and Delta, to be used at the construction site of the bulk mailing facility. North American and Delta personnel used this scaffolding in their work for Kelley. Here, as with the materials supplied by Kelley, the contract could not have been completed and Kelley would not have fulfilled its contractual obligations, had not the scaffolding been provided. This leasing of the equipment was a use of the property within this state such that a use tax is appropriate and reasonable. Kelley is liable for that tax, having utilized the property for profit-making purposes and to its benefit under its contract within Tennessee.

We conclude therefore that Kelley is liable for the use tax on the materials used to carry out the contracts with North American and Delta.

The ruling of the Chancellor is reversed and this cause is remanded to the Chancery Court for the computation of the correct amount of the final judgment.

Reversed and remanded.

BROCK, C. J., and FONES, COOPER and HARBISON, JJ., concur.