BOARD OF PUBLICATION OF the METHODIST CHURCH, INC. d/b/a The United Methodist Publishing House

v.

Jayne Ann WOODS, Commissioner of Revenue of the State of Tennessee.

Supreme Court of Tennessee.

Dec. 8, 1980.

Joseph L. Lackey, Jr., Nashville, for plaintiff-appellee.

William M. Leech, Jr., Atty. Gen., Jim G. Creecy, Sr. Asst. Atty. Gen., Nashville, for defendant-appellant.

OPINION

FONES, Justice.

This is a case involving the application of the Tennessee sales tax to plaintiff, a publishing firm located in this State that delivered certain catalogs to an agent of an out-of-state buyer; this agent then affixed mailing address labels to the catalogs, which were to be mailed to out-of-state addressees. More specifically, the issue involved here is whether the Commerce Clause or T.C.A. § 67–3007 exempts this transaction from taxation. The trial court held that this statute did exempt plaintiff from the sales tax and ruled plaintiff was entitled to a refund of an assessed tax deficiency paid under protest. Defendant has perfected an appeal to this Court. We reverse the holding of the trial court.

I.

Plaintiff, Board of Publication of the Methodist Church, Inc., is an Illinois Corporation qualified to do business in Tennessee. It maintains its principal place of business in Nashville and does business as "The United Methodist Publishing House."

From June, 1974 through January, 1976, plaintiff printed certain catalogs for a company known as Camping World, Inc. This company sells camping supplies at wholesale and retail; it is a Kentucky corporation with its primary place of business located in Bowling Green. Much of Camping World's business stems from sales solicited from the catalogs printed by plaintiff.

Plaintiff hired Bill Hudson and Associates, a Nashville advertising firm, for the purpose of assisting it in the production and distribution of the catalogs. This advertising firm would forward all bills from plain-

tiff to Camping World and was paid a fee by Camping World for its services.

The catalogs were distributed by the following methods: Some were placed on a common carrier by plaintiff for delivery to Camping World; others were picked up directly from plaintiff by Camping World; some were delivered or picked up by Mail Services Company in Nashville; and still others were picked up by Bill Hudson and Associates and forwarded to Mail Services.

Mail Services was employed by Bill Hudson and Associates and Camping World, but was paid directly by Camping World. Its services consisted of fixing mailing labels to the catalogs according to a mailing list provided by Camping World. Once this was done, it would deliver the catalogs to the U.S. Postal Service for delivery to the addressees, most of whom were out-of-state residents.

Plaintiff does not dispute the application of the Tennessee sales tax to all catalogs mailed to Tennessee residents by Mail Services. Neither does it dispute the application of the tax to catalogs picked up directly by Camping World or by its agent, Bill Hudson and Associates, for delivery to Camping World. The only controversy is over the application of sales tax to catalogs picked up by or delivered to Mail Services that were subsequently addressed and mailed to out-of-state residents. As to these catalogs, plaintiff claims that the Tennessee sales tax does not apply due to the exemption of the tax under T.C.A. § 67–3007 and the Commerce Clause of the United States Constitution.

## II.

The declared legislative intent for the application of the Tennessee sales tax is that "every person is exercising a taxable privilege *who engages in the business of selling* tangible personal property at retail *in this state.*" T.C.A. § 67–3003 (Emphasis added.) In addition, "sale" means *"any transfer of title or possession,* or both, exchange, barter, lease or rental, conditional, or otherwise, *in any manner or by any means whatsoever* of tangible personal property for a consideration . . . ." T.C.A. § 67–3002(b) (Emphasis added.)

Exempted from this tax are certain transactions that are beyond the power of the State to tax due to the Commerce Clause of the United States Constitution or that have been exempted by T.C.A. § 67–3007, which reads as follows:

"It is not the intention of this chapter to levy a tax upon articles of tangible personal property imported into this state or produced or manufactured in this state for export; nor is it the intention of this chapter to levy a tax on bona fide interstate commerce. *It is, however, the intention of this chapter to levy a tax on the sale at retail,* the use, the consumption, the distribution, and the storage to be used or consumed *in this state* of tangible personal property after it has come to rest in this state and has become a part of the mass of property in this state. (Emphasis added.)

This Court has had numerous occasions to interpret and apply the provision of this statute.

In *Service Merchandise Co., Inc. v. Tidwell,* 529 S.W.2d 215 (Tenn.1975), the Court was faced with a situation involving the imposition of the State's use tax on printed material brought into Tennessee from Minnesota. This material was trucked into this State by common carrier and unloaded at the regional post office, where it was placed in the mail for delivery to the addressees both within and outside this State. The Court held that these events were *not* taxable under T.C.A.'s § 67–3007 and reasoned that "the interstate character of the transactions in question here did not terminate at the postal docks." *Id.* at 218.

Quoting *Minnesota v. Blasius,* 290 U.S. 1, 9–10, 54 S.Ct. 34, 36–37, 78 L.Ed. 131 (1933) the Court observed that:

" '*If the interstate movement has begun,* it may be regarded as continuing, so as to maintain immunity of the property from state taxation, despite temporary interruptions due to the necessities of the journey or for the purposes of safety and

convenience in the course of the movement . . . . formalities, such as the forms of billing, and mere changes in the method of transportation do not affect the continuity of transit.' " (Emphasis added.) *Service Merchandise Co., Inc. v. Tidwell* at 218.

The Court also noted that this case was distinguishable from other cases upholding taxation because Service Merchandise exercised no control over the printed material once it reached the postal docks. *Id.* at 219. Furthermore, "the act of mailing [was] integrally related to the actual movement in interstate commerce." *Id.*

In *Serodino, Inc. v. Woods*, 568 S.W.2d 610 (Tenn.1978), the Tennessee taxpayer furnished materials and services to repair and renew barges used in interstate commerce. The Court held that no exemption existed for these activities under T.C.A. § 67–3007 and that clearly a sufficient nexus with Tennessee existed because, "[n]ot only [was] the taxpayer a Tennessee corporation, but all of the services [were] performed and all of the parts [were] sold by it in the state." *Id.* at 613.

In *Beecham Laboratories v. Woods*, 569 S.W.2d 456 (Tenn.1978), the Court addressed a situation where certain pharmaceutical samples were stored in plaintiff's warehouse in Tennessee. These samples were manufactured both within and outside the State and were distributed to salesmen and ultimately to doctors within and outside Tennessee. The Court held that the first clause of T.C.A. § 67–3007, excluding taxation of property imported into this State or produced in this State for export, clearly exempted those samples from the Tennessee sales tax. The case was analogous to the facts of *Young Sales Corp. v. Benson*, 224 Tenn. 88, 450 S.W.2d 574 (1970), which was decided adversely to the State.

The Court further noted that the cases of *Vector Co. v. Benson*, 491 S.W.2d 612 (Tenn. 1973), and *Texas Eastern Transmission Corp. v. Benson*, 480 S.W.2d 905 (Tenn. 1972), were not dispositive since neither of those cases involved materials that were being *exported* from the State. Thus, even though both of those decisions had stated that T.C.A. § 67–3007 was intended to allow taxation by the State to the full extent of the Commerce Clause, these statements were dictum as far as the first clause of that statute was concerned. Despite language in former cases to the contrary, "[a] plain reading of the statute indicates that the Legislature intended to create a class of property exempt from the use tax, and we must give effect to this language as written." *Id.* 569 S.W.2d at 459.

A case involving material facts identical to those presented in the instant case has not been presented to this Court, but the Appellate Court of Illinois has addressed a case that for all practical purposes, is indistinguishable from the present case. In *Deere & Co. v. Allphin*, 49 Ill.App.3d 164, 7 Ill.Dec. 130, 364 N.E.2d 117 (1977), plaintiffs consisted of a buyer and an in–state printer who sought a declaratory judgment prohibiting the imposition of the State's use tax and municipal service occupation tax on certain transactions involving advertising brochures. Deere, the buyer, purchased brochures from Hine, the commercial printer. At Deere's request, Hine would deliver the printed material to Desaulniers, where the brochures were placed in envelopes, addressed according to a mailing list provided by Deere, and ultimately mailed to dealers and customers of Deere who resided within and outside of Illinois.

The Illinois Court held that under these facts the State's taxing statutes clearly contemplated the imposition of the taxes on this transaction. Furthermore, the Court held that in taxing this event no violation of the Commerce Clause existed. The court noted that the key question to resolving both these issues was simply this: "Did Deere exercise in Illinois any right of ownership over the printed materials, which would amount to a use taxable by the State, before the materials entered the stream of interstate commerce?" 7 Ill.Dec. at 131, 364 N.E.2d at 118. The court answered this question in the affirmative and in analyzing the taxable event stated:

"Thus Deere exercised a power incidental to its ownership through its agent Desaulniers. Until the brochures were prepared for mailing, the destination of each brochure had not been determined, and any one could have been destined for an Illinois recipient. We believe Desaulniers functioned as a processor, not as a common carrier, and that the printed materials did not begin their journey in the stream of interstate commerce until they were delivered to the post office. [*Joy Oil Co. v. State Tax Com.* (1949) 337 U.S. 286, 69 S.Ct. 1075, 93 L.Ed. 1366; *Service Mdse. Co., Inc. v. Tidwell* (Tenn.1975), 529 S.W.2d 215; Annot., 11 A.L.R.2d 938, § 5.] If the printed matter had been delivered by Hine to Deere, and Deere had prepared the material for mailing and taken it to the post office, the use tax would clearly apply. We do not believe Deere can escape the tax by employing a third party to assemble and mail the brochures for its benefit." *Id.* 7 Ill. Dec. at 132, 364 N.E.2d at 119.

The Illinois Court also correctly distinguished this Court's decision in *Service Merchandise Co., Inc. v. Tidwell, supra,* by noting that in that case the State was attempting to impose a tax on goods already in interstate commerce when they entered the State and were delivered to the post office, whereas in the *Deere* case, the interstate journey had not yet begun when the taxable event of delivering the materials to Desaulniers occurred.

### III.

From the foregoing discussion we conclude that the rationale of the *Deere* decision is applicable to the present case and that plaintiff is not exempt from taxation under the Commerce Clause or clause one or clause two of T.C.A. § 67-3007. No doubt exists that a sale, as defined in T.C.A. § 67-3002, took place when the catalogs were delivered by plaintiff to Mail Services. Mail Services was the authorized agent for the buyer, Camping World, and was under Camping World's direction and control as to how the catalogs were to be delivered or

disposed of; the catalogs were not yet committed to interstate commerce at this time.

Since the transfer of possession or "sale" took place within Tennessee, clearly the transaction was intended to be taxed under T.C.A. § 67-3003 and was not exempt from taxation under the Commerce Clause or T.C.A. § 67-3007, even though the parties contemplated immediate exportation. *International Harvester Co. v. Department of Treasury of State of Indiana,* 322 U.S. 340, 64 S.Ct. 1019, 88 L.Ed. 1313 (1944); *McGoldrick v. Berwind–White Coal Mining Co.,* 309 U.S. 33, 60 S.Ct. 388, 84 L.Ed. 565 (1940); *Central Transportation Company v. Atkins,* 202 Tenn. 512, 305 S.W.2d 940 (Tenn.1957); *Williams Rental, Inc. v. Tidwell,* 516 S.W.2d 614 (Tenn.1974); *Deere & Co. v. Allphin, supra.*

The present case is factually distinguishable from *Young Sales, supra,* and *Beecham Labs, supra* because in neither of those cases was there an allegation that a sale or transfer of possession to a buyer took place in Tennessee.

The case is also factually distinguishable from *Service Merchandise Co., Inc. v. Tidwell, supra,* which was relied on by lower court in this case. As was noted by the Illinois Court in *Deere,* in *Service Merchandise,* the State was attempting to levy a tax on materials *that were already in* interstate commerce before they arrived in Tennessee and that were *still in* interstate commerce at the time the State wished to impose taxation.

In the present case, interstate commerce had not yet begun and the decision as to whether the catalogs would even be shipped out-of-state was still within the control of the buyer, Camping World, when the catalogs were delivered to Mail Services. The law is well established that:

"[t]he carrying of [exports] in carts or other vehicles ... to the depot where the journey is to commence, is no part of that journey. That is all preliminary work, performed for the purpose of putting the property in a state of preparation and readiness for transportation. Until actually launched on its way to another state,

or committed to a common carrier for transportation to such state, its destination is not fixed and certain." *Coe v. Town of Errol*, 116 U.S. 517, 528, 6 S.Ct. 475, 479, 29 L.Ed. 715 (1886).

"Until then it is reasonable to regard [such intended exports] as not only within the state of their origin, but as part of the general mass of property of that state, subject to its jurisdiction, and liable to taxation there . . . ." *Id.* at 525, 6 S.Ct. at 477.

Thus, we hold that in the present case interstate commerce had not yet begun when the catalogs were delivered to or picked up by Mail Services. In addition, a sale or transfer of possession as defined in T.C.A. § 67–3002(b) was completed at this point within the State. Under these facts, a taxable event occurred and no exemption exists under the Commerce Clause of the United States Constitution or clause one or clause two of T.C.A. § 67–3007.

For the foregoing reasons, the decision of the trial court must be reversed and the case remanded for a determination of the tax, penalties, and interest applicable to plaintiff. Costs will be assessed against Board of Publication.

BROCK, C. J., and COOPER, HARBISON and DROWOTA, JJ., concur.