STEIN CONSTRUCTION COMPANY, Plaintiff-Appellant,

v.

John K. KING, Commissioner of Revenue, State of Tennessee, Defendant-Appellee.

Supreme Court of Tennessee.

Dec. 20, 1982.

R. Allen Edgar, Miller & Martin, Chattanooga, for plaintiff-appellant.

Kathryn Behm Celauro, Asst. Atty. Gen., Nashville, for defendant-appellee.

## OPINION

BROCK, Justice.

### I

The issue in this case is the application of the use tax to "borrow dirt." "Borrow dirt" is dirt that is excavated from one site and used to fill in another site. The "borrow dirt" in the instant case was used to build the roadbed of ramps and approaches to a new bridge in Hamilton County. The State asserts that pursuant to T.C.A., § 67–3004, a use tax was owed on the "borrow dirt" used to construct the bridge approaches.

The State contracted with Michaels Construction Company and Bridge Builders, Inc., for construction of a new bridge and accompanying ramps and roadways. Bridge Builders, Inc., subcontracted with the plaintiff, Stein Construction Co., for the acquisition and delivery of "borrow dirt." The plaintiff is a partnership in the business of earth removal, road building, and similar services. Plaintiff was able to secure dirt from locations both north and south of the proposed bridge. In some instances, no "royalty" was charged to the plaintiff, since the landowner's property was enhanced by the dirt removal. However, in other instances, the plaintiff paid a royalty of fifteen cents per cubic yard for the right to remove dirt from the property. After sites were acquired, the process undergone by the plaintiff included clearing the land, relocating utility poles and lines, removing the topsoil, loading the dirt into trucks, and then transporting the "borrow dirt" to the construction site.

The Commissioner assessed the use tax based on the fair market value of the "borrow dirt" and he asserts that the fair market value of "borrow dirt" subject to the use tax includes any royalties paid for the right to sever the dirt, plus any clearing and loading costs, and the cost of relocating any utilities. The Commissioner determined that all costs [1] involved in the severing of the dirt, exclusive of actual transportation costs, were subject to a use tax pursuant to T.C.A., § 67–3004. The plaintiff paid this tax under protest and is now seeking to recover both the tax paid and the interest accrued.

### II

The pertinent portion of T.C.A., § 67–3004, is as follows:

"Where a manufacturer, producer, compounder or *contractor* erects or *applies tangible personal* property, which he has manufactured, produced, compounded or *severed from the earth*, .... such person so using the tangible personal property

---

1. These costs consisted of the following:
   a. Royalty ($0.15/cu. yd.)
   b. Clearing the land
   c. Relocating utility poles and lines
   d. Setting aside the top soil
   e. Bulldozing dirt into piles
   f. Scooping dirt up by means of a loader
   g. Loading dirt into trucks.

shall pay the tax herein levied on the *fair market value* of such tangible personal property *when used,* without any deductions whatsoever, provided, however, the foregoing shall not be construed to apply to contractors or subcontractors who fabricate, erect or apply tangible personal property which becomes a component part of a building, and which is not sold by them as a manufactured item." (Emphasis added.)

■ It is uncontroverted that Stein is a contractor engaged in severing materials from the earth. The application of T.C.A., § 67–3004, requires that "borrow dirt" be categorized as tangible personal property. The Commissioner contends that the dirt, after severance, constitutes tangible personal property because it can be seen, weighed, and touched, but, plaintiff, Stein, asserts that the tangible personal property classification is not applicable to dirt in this context. Primarily, the plaintiff relies upon the fact that the legislature recently amended this statute[2] to exclude from taxation the use of fill dirt. This modification does not, however, apply to the facts in the instant case; it was enacted after this dispute arose. The best reasoned classification is to treat unexcavated dirt as real property, but, once it is severed, as by means of a shovel, it becomes tangible personal property in accordance with the State's theory and, therefore, subject to a use tax.

The fair market value of the "borrow dirt" is disputed. Generally speaking, fair market value constitutes the amount a willing buyer will pay a willing seller for a specific product. Stein asserts that the fair market value of the dirt is limited to the royalty of fifteen cents per cubic yard. The State, however, contends that the royalty paid is only one of several factors to be considered in measuring fair market value of the dirt, that all severance costs, excluding any shipping costs, should be included in fair market value.

Furthermore, the time at which to measure fair market value of the dirt is disputed. The statute provides that the tax is levied on "the fair market value of such tangible personal property when used." T.C.A., § 67–3004.[3] Stein contends that the dirt is used when it is purchased. In accordance with the plaintiff's theory, the dirt is being used when the bulldozer blade is first put into the ground. The State, however, contends that the dirt is not used until it is carried to the job site and applied to its intended purpose.

■ The natural and ordinary sense of the contractors' use tax imposed by the first paragraph of § 67–3004 is that the measure of the tax should be the fair market value of the materials at the time the contractor exercises the rights and powers incident to ownership of the materials in performing his contract. Any costs incurred by the contractor prior to the use of the materials must be taken into consideration in the computation of the tax. However, only those costs which enhance the fair market value of the materials when used by the

---

**2.** T.C.A., § 67–3004(2) (1980 Supp.). The legislature enacted Public Chapter 812 Tenn.Pub. Acts of 1980 which became effective April 23, 1980, and abolished the off-site/on-site distinction. T.C.A., § 67–3004, now reads in relevant part as follows:

"67–3004. *Application of property by contractor.*—(a) Where a manufacturer, producer, compounder or contractor erects or applies tangible personal property, which he has manufactured, produced, compounded or severed from the earth, other than:

(1) Any severed from the earth and moved from one (1) place to another on the same construction or job site; and

(2) Dirt, soil, earth or any other kind of material when used for fill, whether from the same construction or job site or elsewhere, such person so using the tangible personal property shall pay the tax herein levied on the fair market value of such tangible personal property when used, without any deductions whatsoever, provided, however, the foregoing shall not be construed to apply to contractors or subcontractors who fabricate, erect or apply tangible personal property which becomes a component part of a building, and which is not sold by them as a manufactured item."

**3.** "Use" is defined by T.C.A., § 67–3002(h), as "the exercise of any right or power over tangible personal property incident to the ownership thereof."

contractor should be reflected in the measure of the tax. This is indicated by our decision in *Tennessee Blacktop, Inc. v. Benson,* Tenn., 494 S.W.2d 760 (1973), wherein the Court included the labor cost of compounding asphalt from its ingredients in computing the fair market value of the asphalt when used by a contractor to pave roads.

The royalty represents the fee paid for the right to remove the dirt from a specific location. But when the removal of the dirt constitutes a mutually beneficial arrangement, no royalty amount is charged. Stein claims that the amount of the royalty represents the fair market value when the dirt is purchased. Since "borrow dirt" is the dirt that is excavated from one site and used as fill at another, its fair market value should be the amount a willing buyer will pay a willing seller for this severed yet untransported dirt. The costs incurred by the seller to sever borrow dirt is just one of a group of factors to be considered in determining fair market value of "borrow dirt." Items to be considered in assessing the fair market value of the "borrow dirt" in this case include the royalty, if any, the cost of clearing the excavation site, severing the dirt from the ground, piling the dirt for loading, and relocating telephone and water lines; the cost of loading and transportation to the bridge site should not be included.

This conclusion is consistent with our previous decisions. In *McDougall Co. v. Atkins,* Tenn., 301 S.W.2d 335 (1957), the Court held that since sheet metal was going to be made into air ducts for a building the fair market value was not determined by the cost of the sheet metal alone, but also included the cost of labor employed in the fabrication. More recently in *Shoppers Guide Pub. Co., Inc. v. Woods,* Tenn., 547 S.W.2d 561 (1977), the Court determined that a "newspaper" which published no news articles but only carried advertisements and local announcements, was subject to a use tax on the paper. The Court stated that "bringing together and combining of the raw materials such as paper, ink, dies, plates, and the like, and their use in the printing of the advertisements in the form of the 'Shoppers Guide' is a fabrication of tangible personal property and is a use of the property subject to taxation as a privilege.... See T.C.A. § 67–3004 ...." Furthermore, in *Tennessee Blacktop, Inc., supra,* the Court held that levying use taxes on a contractor for the cost of compounding asphalt for use in the performance of road construction contracts, even though the contractor had paid sales tax on the constituent ingredients used to make the asphalt, was not objectionable as double taxation or as an unconstitutional classification against a contractor. In *Woods v. M.J. Kelley Co.,* Tenn., 592 S.W.2d 567 (1980), the Court noted that the taxable privilege of use is not confined to physical manipulation of property but extends to utilization of property for a profit-making purpose.

### III

Plaintiff further contends that T.C.A., § 67–3004, contains an unreasonable classification. Prior to its 1980 amendment, T.C.A., § 67–3004, in assessing tax liability made a distinction between dirt severed from land off the construction site and hauled to the site for use and dirt which was merely moved from one location on the construction site to another location on such site; the former was taxed, the latter was not. The plaintiff submits that there is no reasonable basis for such a distinction. Apparently the legislature enacted the distinction for reasons of convenience of administration. The State has considerable latitude in taxing different classifications of taxpayers and such classifications will be upheld if there are reasonable grounds. The fact that the legislature in 1980 amended T.C.A., § 67–3004, to entirely exclude "borrow dirt" from taxation does not provide evidence that the original classification was discriminatory. In our opinion, there is adequate justification for the legislature's action, the statute's constitutionality as it existed at the time of the events involved in this suit is upheld.

This case is remanded to the trial court for determination of the amount of tax consistent with this opinion. Costs incurred upon this appeal are taxed against the plaintiff.

FONES, C.J., and COOPER, HARBISON and DROWOTA, JJ., concur.