**J.C. PENNEY COMPANY, INC.,**
Plaintiff/Appellant,

v.

**Martha B. OLSEN, Commissioner of
Revenue, State of Tennessee,
Defendant/Appellee.**

Supreme Court of Tennessee,
at Nashville.

Sept. 10, 1990.

James C. Gooch, Michael D. Sontag,
Bass, Berry & Sims, Nashville, for plain-
tiff/appellant.

Charles W. Burson, Atty. Gen. & Report-
er, Daryl J. Brand, Asst. Atty. Gen., Nash-
ville, for defendant/appellee.

## OPINION

O'BRIEN, Justice.

J.C. Penney Company, Inc., appellant, is
a Delaware corporation having its principal

place of business in the City of New York. During all pertinent times appellant operated a chain of at least 33 retail stores in the State of Tennessee and also operated a catalog mail-order business. To advertise its merchandise, and to promote and facilitate purchases of this merchandise by Tennessee customers, appellant arranged for catalogs to be sent to Tennessee residents without charge to the recipients.

This case involves assessments of Tennessee Use Tax made by the Commissioner of Revenue of the State of Tennessee attributable to the merchandise catalogs sent from out of state to Tennessee residents. Appellant filed a protest and after various negotiations with the Department of Revenue a complaint was filed in Chancery Court to recover the tax plus interest and penalties assessed by and paid to the Department of Revenue. The complaint was subsequently amended to cover two separate audit periods, the first from 1 May 1979 through 30 April 1982 and the second for the period from 1 January 1982 through 31 May 1985. The recovery sought for taxes, interest and penalties totaled $1,003,193.85 with regard to the assessment on the distribution of the catalogs. Appellant additionally sought recovery of taxes, interest and penalties in the amount of $84,550.75 assessed upon its use of pre-printed advertising circulars.

The facts of the case were stipulated in the trial court and are recited here only to the extent they are involved in the issues for decision. In conjunction with its mail-order business appellant has developed a series of catalogs which are mailed to its customers throughout the United States. Production of the catalogs, including planning, design and layout, was done in New York and the catalogs were then printed by third-party independent printers at plants located in Indiana, South Carolina and Wisconsin. Various methods were employed to ship the catalogs from the out-of-state printers to Tennessee addressees. All decisions regarding the manner in which direct mail catalogs were shipped to Tennessee addressees were made at appellant's New York offices. All catalogs were printed outside the State of Tennessee and shipped from these out-of-state locations directly to Tennessee addressees via common carrier and/or United States Mail. Appellant employed three different methods of shipment for its seasonal, or so-called "major," catalogs. A small portion were mailed by the printer from Warsaw, Indiana by fourth class mail directly to the Tennessee addressees. Approximately half of the major catalogs were shipped via common carrier by the printer, with address labels already affixed, to U.S. post offices in Tennessee, where post office employees sent the catalogs by fourth class mail directly to the Tennessee addressees. The remaining major catalogs were shipped by the printer via common carrier, along with detached address cards, to U.S. post offices in Tennessee, where post office employees sent the catalogs by fourth-class mail directly to the Tennessee addressees. All of the sale, specialty, or so-called "small" catalogs were sent by the out-of-state printers by third-class mail directly to the Tennessee addressees. In each case, appellant prepared the address labels or detached address cards used by the printers shipping the catalogs to the Tennessee addresses.

The Chancellor held for the Department of Revenue in the court below and dismissed the complaint. This appeal resulted. The issues raised here are:

(1) Did the Chancellor err in holding that appellant exercised a taxable use with respect to catalogs printed outside of Tennessee and shipped from these out-of-state locations to Tennessee addressees?

(2) If it is determined that appellant exercised a taxable use with respect to the catalogs in issue, whether the decision should be applied prospectively.

(3) Whether the Chancellor abused his discretion in finding that appellant was liable for the penalties assessed against it by the Department of Revenue?

In reference to the first issue it is appellant's insistence that it is liable for the use

tax on the catalogs if, and only if, it used them in Tennessee within the meaning of the applicable Tennessee sales and use tax statutes. It is earnestly argued that this is a question of first impression in Tennessee. We cannot agree with that assertion.

As part of Tennessee's Use Tax Law a tax is levied upon the privilege of using tangible personal property in the State. T.C.A. § 67-6-102(4), as it existed at the time this suit was commenced, provided as follows:

> "Dealer" means every person, as used in this chapter, who: ... (B) Imports or causes to be imported, tangible personal property from any state or foreign country, for sale at retail, for *use consumption, distribution,* or for storage to be used or consumed in this state; (Emphasis supplied).
>
> (G) Maintains or has within this state, directly or by a subsidiary, an office, distributing house, sales room, or house, warehouse, or other place of business;
>
> (J) Distributes catalogues or other advertising matter and by reason thereof receives and accepts orders from residents of this state; ...

T.C.A. § 67-6-201 provided, in pertinent part:

> It is declared to be the legislative intent that every person is exercising a taxable privilege who ... uses or consumes in this State any item or article of tangible personal property as defined in this chapter, irrespective of the ownership thereof ... or who rents or furnishes any of the things or services taxable under this chapter.

T.C.A. § 67-6-203 fixes the tax on property used, consumed, distributed or stored:

> A tax is levied at [a fixed percentage] of the cost price of each item or article of tangible personal property when the same is not sold but is used, consumed, distributed, or stored for use or consumption in this state; provided, that there shall be no duplication of the tax.

T.C.A. § 67-6-210 specifically addresses the imposition of use tax on property imported from other states or foreign countries:

> (a) On all tangible personal property imported, or caused to be imported from other states or foreign countries, and used by him, the "dealer" as defined in § 67-6-102(4), shall pay the tax imposed by this chapter on all articles of tangible personal property so imported and used, the same as if the articles had been sold at retail for use or consumption in this state. For the purposes of this chapter, the use, consumption, or distribution, or storage to be used or consumed in this state of tangible personal property shall each be equivalent to a sale at retail, and the tax shall thereupon immediately levy and be collected in the manner provided herein; provided there shall be no duplication of the tax in any event.

Appellant cites numerous cases from other jurisdictions to support its position, however we must be governed by the statutes and case law in this State as they apply to the situation at hand. In *Woods v. M.J. Kelley Co.*, 592 S.W.2d 567 (Tenn.1980), the court, citing various earlier cases, commented cogently, "The use tax is a compensating tax, designed to prevent the avoidance of sales taxes and ensure that Tennessee manufacturers and merchants remain on equal competitive footing with non-residents who enter this State to do business.... Taken together, the sales and use taxes provide a uniform scheme of taxation on goods (tangible personal property) purchased within the State and goods purchased outside the State for "storage, use or consumption" within the State.... '[T]he use tax is a tax on the privilege of using, consuming, distributing or storing tangible personal property after it is brought into the State from without the State. *Broadacre Dairies v. Evans*, 193 Tenn. [441] at 444-445, 246 S.W.2d [78 at] 79 (1952). This definition is fairly uniform throughout the states. See 68 Am.Jur. Sales & Use Taxes, § 171 (1953). Thus, it was the legislative intent, as manifested in § 67-3005, T.C.A., [T.C.A. § 67-6-210], to

impose a use tax on all tangible personal property imported from other states and used and consumed in this State, provided a similar tax, equal to or greater, has not been paid in the exporting state.' "

■■■ Appellant is undoubtedly a *dealer* as defined in T.C.A. § 67–6–102. The company caused tangible personal property to be imported into Tennessee from other states in the form of its catalogs. The proof indicates that it surely did use the catalogs for its own benefit although the title and possession of them may have been in the recipients. The Tennessee scheme of taxation is meant to encompass much more than simple title to and possession of tangible personal property. The concept of use has not been confined to physical manipulation of the property. The taxable privilege of use extends to the utilization of property for profit-making purposes. See *Woods v. Kelley, supra,* p. 571. We hold that the trial court ruled correctly that appellant exercised a taxable use with respect to the catalogs printed outside of Tennessee and shipped in-state to Tennessee addresses.

■■■ The second issue raised is whether the decision that a taxable use with respect to the catalogs should be applied prospectively. In arguing for prospective application appellant relies heavily on this Court's decision in *Service Merchandise v. Tidwell,* 529 S.W.2d 215 (Tenn.1975), and several later cases which it insists support its position in light of the court's adherence to the *Service Merchandise* doctrine. Appellant points to the decisions in *Board of Publication of the Methodist Church v. Woods,* 609 S.W.2d 501 (Tenn.1980); *LeTourneau Sale & Service, Inc. v. Olsen,* 691 S.W.2d 531 (Tenn.1985); and *Sears Roebuck & Co. v. Woods,* 708 S.W.2d 374 (Tenn.1986). Appellant's reliance is misplaced. In *LeTourneau,* the Court specifically stated that *Service Merchandise Co. v. Tidwell,* was simply inapposite because in that case goods were continuously in transit in interstate commerce and never "came to rest"

in Tennessee. The *Board of Publication* case involved the application of Tennessee sales tax to the plaintiff, an in-state firm delivering catalogs to an agent of an out-of-state buyer. More specifically, the issue involved was whether the commerce clause or T.C.A. § 67–3007 [T.C.A. § 67–6–313] exempted the transaction from taxation. This Court carefully noted that the *Service Merchandise* case was factually distinguishable because the State was attempting to levy a tax on materials already in interstate commerce before they arrived in Tennessee and were still in interstate commerce at the time the State wished to impose taxation. In *Sears Roebuck & Co. v. Woods, supra,* the Court recognized the same distinguishing feature in the *Service Merchandise* case. That is that the catalogs were still in interstate transit.

In the case at bar the goods came to rest in Tennessee where a taxable service was performed and taxed accordingly. The goods were out of the stream of commerce. There was no violation of the commerce clause and a determination that the tax imposed should not be applied prospectively would not be contrary to the Court's decision in *Service Merchandise.* Moreover, we do not think the continued validity of the rationale of this Court's decision in *Service Merchandise,* has, as suggested by appellant, been placed in jeopardy by the recent United States Supreme Court decision in the case of *D.H. Holmes Co., Ltd. v. McNamara,* 486 U.S. 24, 108 S.Ct. 1619, 100 L.Ed.2d 21 (1988). The *Service Merchandise* decision stands for no more than that the commerce clause of Article 1, § 8 of the United States Constitution gives exclusive power to the Congress to regulate interstate commerce, and its failure to act on the subject in the area of taxation nevertheless requires that interstate commerce shall be free from any direct restrictions or impositions by the states. See *N.W. States Portland Cement Co. v. State of Minn.,* 358 U.S. 450, 79 S.Ct. 357, 362, 3 L.Ed.2d 421 (1959). There is no need for recision or reversal of *Service Merchandise.* The sales and use tax statutes in this State are

in complete accord with that authority. See T.C.A. § 67–6–211; § 67–6–313. Therefore, appellant's argument for prospective application in that regard is without merit.

Although the Commerce Clause is not involved here, *D.H. Holmes Co., supra,* states clearly that it makes little difference for Commerce Clause purposes whether appellant's catalogs "came to rest" in the mailboxes of its customers or whether they were still considered in the stream of interstate commerce. The distribution of the catalogs constitutes a taxable use. We are satisfied that the Tennessee tax statutes comply with the formulation set out in *Holmes, supra,* 108 S.Ct. at 1623, and *Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274, 97 S.Ct. 1076, 1079, 51 L.Ed.2d 326 (1977). (1) The tax is applied to an activity with a substantial nexus with the State. (2) The tax is fairly apportioned and does not allow for duplication of taxes. (3) The tax structure does not discriminate against interstate commerce. (4) The tax relates to benefits provided by the State which include a number of services to facilitate appellant's sale of merchandise within the State, including fire and police protection for appellant's stores, as well as many other civic benefits noted in *Holmes, supra.* We hold, for the reasons stated, that the catalog distribution was properly subjected to the tax, and appellant was not entitled to a recovery of the amounts paid under protest.

■ Appellant's final argument that it should not be penalized for relying upon a seemingly proper and valid recent decision of this Court is not well founded. With respect to the catalog issue, appellant insists it would be patently unfair to impose penalties due to its reliance upon which it refers to as the recent decision in *Service Merchandise, supra.* We have heretofore held that any such reliance was unwarranted. With respect to the newspaper insert issue, it is argued that the state of the law at the time the assessment was made was unclear and, therefore, the penalty should be refunded.

Appellant posits that at the time of the assessment, no rule, regulation or case law existed with respect to the application of the use tax to advertising supplements. It is conceded that cases from other jurisdictions which had considered the issue have reached conflicting results. It is insisted that it was not until the 1986 decision in *Sears Roebuck & Co. v. Woods, supra,* that any certainty existed in this area of law in Tennessee.

The Chancellor, at trial, found that in *Shoppers Guide Publishing Co., Inc. v. Woods,* 547 S.W.2d 561 (Tenn.1977) this Court approved the definition of "newspaper," set forth in Tenn.Admin.Comp. 1320–5–1–.46 (Sales/Use Tax Rule 46). This Court found in *Shoppers Guide* that the publication in question was no more than a series of advertising handbills in a newspaper format and could not be considered a newspaper. The lower court here rationalized that the definition of "newspaper" was established as early as the year 1974 when Rule 46 was promulgated. He further noted that Sales/Use Tax Rule 99 was promulgated in 1974 which provided:

Catalogues, magazines, handbills, and other items of tangible personal property which are sold, imported or caused to be imported into the state for advertising purposes, and which are not for resale purposes, are subject to the sales or use tax.

He concluded, and we agree, this appellant failed to adequately prove that the law of Tennessee was unsettled, unclear or misleading prior to the *Sears* decision. He held that the plaintiff knew or reasonably should have known that its advertising preprints were taxable.

In *Tidwell v. Goodyear Tire & Rubber Co.,* 520 S.W.2d 721 (Tenn.1975), relied upon by the defendant, this Court cited *Swartz v. Atkins,* 204 Tenn. 23, 315 S.W.2d 393 (1958) for the proposition that "where the claim is purely equitable, the court will grant or refuse relief at its discretion, but when it is a purely legal claim or demand equity will apply the requirement of the statute and not relieve the claim."

In *Tidwell* the Court cited a number of other cases in which equitable relief was denied. In *Combustion Engineering v. McFarland*, 209 Tenn. 75, 349 S.W.2d 138 (1961), the taxpayers petition for equitable relief was denied under the authority of *Swartz, supra.* In *General Electric Co. v. Butler*, 211 Tenn. 196, 364 S.W.2d 361 (1963) the taxpayers' claim was predicated upon the proposition it was guilty only of honest mistakes or a mistaken interpretation of the Sales and Use Tax law. Equitable relief was denied. In *Tidwell, supra,* the Court stated particularly, "we no longer view the complexity of the law as being a consideration nor do we agree that a misunderstanding by the taxpayer of his liability, standing alone, would justify penalty relief." The Court concluded with the admonition that in granting equitable relief the case was limited to its own factual situation and not to be construed as liberalizing the predicates for penalty relief. We find nothing under the stipulated facts in this case to warrant relaxing the standards enunciated in *Tidwell, supra,* so as to justify penalty relief.

The judgment of the trial court is affirmed. The costs are assessed against the appellant.

DROWOTA, C.J., FONES and HARBISON, JJ., and LEWIS, Special Justice, concur.

ORDER ON PETITION TO REHEAR

PER CURIAM.

Appellant has filed a respectful petition to rehear in this cause which the Court has fully considered and concludes the petition must be denied.