Morton Pharmaceuticals, Inc., Appellee,

*v.*

Alfred T. MacFarland, Commissioner, etc., Appellant.

368 S. W. 2d 756.

(*Nashville,* December Term, 1962.)

Opinion filed June 4, 1963.

GEORGE F. McCANLESS, Attorney General, MILTON P. RICE, WALKER T. TIPTON, Assistant Attorneys General, Nashville, for appellant.

H. A. McBRIDE and THOMAS F. JOHNSTON, Memphis, ARMSTRONG, McCADDEN, ALLEN, BRADEN & GOODMAN, Memphis, of counsel, for appellee.

Mr. Chief Justice Burnett delivered the opinion of the Court.

This suit was originally filed by the appellee to recover use taxes paid under protest. The Chancellor determined the matter in favor of the taxpayer and against the Commissioner, who has seasonably appealed to this Court.

The appellee is a drug manufacturer and wholesaler in Memphis, Tennessee, and in conducting this business it purchases from various suppliers large quantities of non-drug items which it distributes among its physician, clinic and hospital customers in conjunction with its sales of pharmaceuticals, and these customers of the appellee have the choice of purchasing pharmaceuticals from either of two price lists. One of these, designated as the "Morton Pharmaceutical" list affords the purchasers of the right to receive or accumulate credits towards various "gifts" or "premiums" described in a catalog distributed by appellee. The other list, known as the "Modern Medicine" price list, extends to its purchasers no such rights. The prices of the same medicines in the respective catalogs are very much larger in the pharmaceutical catalog than in the "Modern Medicine" catalog. The physicians and hospitals purchasing from the Morton Pharmaceutical price list have the choice of non-pharmaceutical articles from this catalog and receive from appellee invoices for the pharmaceuticals alone. On these invoices no specific statement of any consideration for the non-pharmaceutical items is given to the customer. The cost of such non-pharmaceutical merchandise to the appellee is reflected in its profit and loss statement as a selling expense.

The Commissioner takes the position that the "gift" or "premium" merchandise acquired by the appellee was tangible personal property purchased for its own use, and accordingly asserted against the appellee a use tax deficiency aggregating approximately $30,000.00, covering the years 1955 to 1959, inclusive. This amount was paid by the appellee under protest and the present suit filed for its recovery.

The Chancellor in a rather well reasoned opinion, among other things, held:

"Regardless of what anything may be called it remains what it is. It is indisputable that regardless of the ads, 'Gift for you' and 'Free of Extra Charge', they were not gifts nor were they free. The merchandise was bought and paid for by the doctors and the sales tax was paid on the entire sale even though it (the sales tax) was charged to the medicine. So it can be rightly said that the form of these transactions is a 'gift' but the real substance is a sale. If the taxpayer was attempting to avoid or evade a tax by 'form' I am sure the State would take the position of looking through the form to reach the substance—and the tax."

Appropriate errors have been assigned by the Commissioner. The Commissioner says:

"This case really comes down to the question of what is the best evidence of complainant's status respecting the non-drug merchandise it dispenses, the documentary evidence in the record reflecting same, or its own contentions and verbal representations made after the fact."

Thus the errors assigned largely hinge around this statement of the Commissioner. In other words, these

errors contend that these non-pharmaceutical items within the meaning of the sales and use tax statute (sec. 67-3002 et seq., T.C.A.) were actually acquired by the appellee for its own use in promoting its sales of its pharmaceuticals and were really gifts to the purchasers of these pharmaceuticals rather than sales to them. The contention is, too, that under Sales Tax Regulation 49, the appellee was the beneficial user of such tangible personal property and accordingly was liable for the use tax with respect to the cost price thereof. Contrary to the contention of the Commissioner the appellee takes the position and the record shows that it received a gross profit of from twenty-three (23%) per cent to thirty (30%) per cent on its bulk transfers of drugs and personal merchandise to its customers, which included a mark-up of profit in excess of the cost on the transfers of items of personal merchandise. The record shows that a sales tax was paid by appellee on the entire bulk transfer of personal merchandise and drugs. The record also shows that the Internal Revenue Service has determined that such transfers of personal merchandise by appellee were sales at retail. Of course, this fact is not controlling or conclusive on us, but it is a persuasive action by another and separate tax collecting authority.

Under these separate catalogs, which the appellee furnishes its customers, the customer can buy from one catalog at the standard price, but if he buys from the other catalog the catalog plainly shows the mark-up on these drugs to cover the cost of this premium merchandise plus a profit.

The Commissioner's argument is that the charter of the appellee authorizes it to engage in the manufacture and

distribution of drugs and things of that kind, toiletries, etc., but it does not authorize the appellee to engage in the sale of furniture, jewelry, clothing, sporting goods, and things of that kind, and that in keeping its records with reference to the sales made under the Morton Pharmaceutical catalog its own bookkeeping failed, because the bookkeeping system of the appellee showed the cost of these non-drug items, which had been acquired by it for distribution to its customers, as a selling expense. Thus it is very forcibly argued that the Court accept these things, the way the company carried this on its books, rather than the evidence offered in court as to the fact that these were really charged for and a profit made on them above the cost. The Chancellor took the position since it had been shown that they were charged for and that a profit was made on them by the pharmaceutical company, and, since the customer knew, having the two catalogs, that he was actually paying for these things even though they weren't billed, it was a sale for a consideration and consequently was not a gift, and since the whole tax had been paid on the gross amount they were sold for then they weren't liable for any tax. The State in support of its contention that its reasoning on the weight to be given this evidence, that is, from the books rather than the oral testimony of witnesses, should be credited, cites the case of *Vogt, Inc. v. Ganley Bros. Co.*, 185 Minn. 442, 242 N.W. 338. A careful reading of this case though shows that it is not in point. In the Ganley Bros. case Vogt had done business in Minnesota without complying with the law of that state to do business within the state, and thus it was that the court accepted the corporate records even though the testimony of the President of Vogt company was to the contrary of this fact.

In other words he testified that the business that had been done by him was as an individual and not as a corporation. The court for very obvious reasons, good reasons as pointed out in the opinion, refused to believe Mr. Vogt and accepted the corporate records. The court likewise pointed to a statute of that state and said: "Facts, proven to the point of demonstration, control as against mere declarations of witnesses." This was the basis of that opinion, and in our judgment the opinion is not persuasive here.

■■ We then come to another practical practice matter where the Chancellor has found certain facts and there is ample material evidence to support this finding. On appeal to this Court we must presume that the judgment below is correct and the burden is cast here upon the Commissioner to show that there is a preponderance of the evidence against the finding of the Chancellor. When the Commissioner does not carry this burden he is not entitled to a reversal on this factual situation. In our judgment there is no preponderance against the finding of the Chancellor because it seems logical to us and is clearly based on very material evidence. The way the books were kept does not nullify what the witnesses testified to as to the purchase and sale of these non-medical goods but is merely left for an inference, and when this inference is overcome by the positive swearing of witnesses as to what happens clearly this would overcome the inference that the Commissioner gathers from the way the books were kept by this company.

■ There was no argument in this record as to the legal propositions set forth by the Commissioner in his very able brief and in his likewise very able argument made before this Court. There is no question but that

the Commissioner has a right to adopt certain regulations as is shown by an opinion of this Court recently handed down of *General Electric Co. v. Butler, Com.,* 211 Tenn. 196, 364 S.W.2d 361, and, of course, clearly from what was there said we agree that the Commissioner has a right to make rules and regulations and that the rule and regulation that was made herein does prohibit the purchase of merchandise to be given away as a gift, but the clear weight of the proof herein is that this was a sale even though called a gift. We must, and do, concur with the Chancellor on this question.

The State cites as authority for its position *United States Gypsum Co. v. Green,* (Fla.) 110 So.2d 409, 411. In this case the taxpayer bought certain trinkets and things which it gave away as a sales, gimmick, or whatever you would call it, and there was no contention that these things were other than donations. Thus it was that clearly this Florida case, which we have read and parts of it re-read, supports the proposition that if things were bought just for a give-away in this way they would be taxable under our statute. In the Florida case these were purely donations on that feature of it, but there are many other features to it, too, which are not applicable here. In other words the Florida case does not have any contention on this line that these things were sold.

The Florida court approved a regulation the Commission had made with reference to donations of tangible personal property and remarked in the course of the opinion in reference to this regulation that "It is clear that the relator did not import the samples into this State for resale. Rather the relator was the ultimate user thereof." The Commissioner in this State has adopted a sim-

ilar regulation and the application of the Sales and Use
Tax is known as Regulation 49, which in part reads:

"Items of tangible personal property which are with-
drawn from a dealer's stock for which a resale certifi-
cate has been issued his supplier, or which are pur-
chased for use as premiums or gifts, are subject to the
sales or use tax."

This regulation was promulgated pursuant to authority
conferred upon our Commissioner under sec. 67-3045,
T.C.A. Unquestionably such a regulation is a valid regu-
lation and applicable under a factual situation wherein
it should be applied. It should not be applied herein be-
cause this personal property was actually sold to the
purchasers and a profit made thereon by the appellee as
hereinabove indicated and as is admitted in the Commis-
sioner's brief when he says:

"Defendant of course recognizes that the customers
were paying for the merchandise of a non-drug nature
received by them from complainant."

■ ■ In interpreting statutes and applying them in
these revenue cases, we must keep in mind that doubtful
language in taxing statute should be resolved in favor
of the taxpayer, *(Templeton v. Bartlett,* 190 Tenn. 347,
229, S.W.2d 509). The reverse is true though in construc-
tion of exceptions and exemptions from taxation. These
tax statutes will not be extended by implication beyond
the clear import of the language used, nor will their oper-
ation be enlarged so as to embrace matters or persons
not specifically named or pointed out. *Neuhoff Packing
Co. v. City of Chattanooga,* 191 Tenn. 395, 234 S.W.2d 824.

The nearest case in point here that has been pointed out
to us by either side is one cited by the appellee. In a search

by us we have found no other more in point. The case is *State Tax Commission of Arizona v. Consummers Market, Inc.*, 87 Ariz. 376 351 P.2d 654, 80 A.L.R.2d 1216. In this case the court held that where a supermarket operator issued the customers, and itself redeemed for merchandise premium trading stamps, the value of which was added to the charges made for items sold in the regular course of business, so that the value of stamps was included in total gross sales, the operator had paid the privilege transaction tax based on gross sales and that the operator was not liable to pay an additional privilege transaction tax computed on the value of merchandise given as premiums to its customers in redemption for the stamps. We quote as applicable to the instant case certain excerpts from this Arizona case wherein that court said:

> "This, in our view, is a matter of elementary economics, and it is difficult to imagine that the legislature could have intended that a tax be imposed in this case, for the reason that it is a part of the whole transaction of which the redemption plan is only a part, and the imposition of a tax on the latter would amount to double taxation.
> "* * * The claim was that the premiums were a gift to customers as an inducement to purchase their merchandise."

After a thorough consideration of all authorities we can find on the subject, including the very able briefs of both sides herein, we are forced to the conclusion that the Chancellor was correct. Accordingly, his decree is affirmed.

WHITE, DYER and HOLMES, JUSTICES, concur.

CLEMENT, SPECIAL JUSTICE, not participating.