**LeTOURNEAU SALES & SERVICE, INC., Plaintiff-Appellee,**

v.

**Martha OLSEN, Commissioner of Revenue, State of Tennessee, Defendant-Appellant.**

Supreme Court of Tennessee, at Jackson.

May 28, 1985.

J. Robert Walker, Asst. Atty. Gen., Nashville, for defendant-appellant; W.J. Michael Cody Atty. Gen. & Reporter, Nashville, of counsel.

Charles M. Crump, Memphis, for plaintiff-appellee; Apperson, Crump, Duzane & Maxwell, Memphis, of counsel.

## OPINION

DROWOTA, Justice.

In this case the Plaintiff sought recovery from the Defendant Commissioner of Revenue of sales taxes paid under protest. The chancellor granted the relief requested and the Defendant has appealed to this Court. At issue is whether the Plaintiff is involved in a taxable "repair" service under the sales and use tax law, T.C.A. §§ 67–6–101 et seq., and whether the tax sought to be imposed is in violation of the Commerce Clause of the United States Constitution and T.C.A. § 67–6–313 as an unconstitutional burden upon interstate commerce.

LeTourneau Sales and Service, Inc., is a Tennessee corporation involved in purchasing, selling, manufacturing and servicing heavy equipment, primarily equipment manufactured by Marathon LeTourneau Corporation, a Texas corporation. The vast majority of Plaintiff's business is with customers located outside of Tennessee. Plaintiff maintains a plant in Memphis, Tennessee where the major service work for customers in the eastern United States is undertaken. Marathon LeTourneau provided technical and financial support during the construction of the Memphis facility, which was financed primarily through industrial revenue bonds.

Because of the size of the equipment involved, usually only the damaged component, typically a gear motor, will actually be sent to the Plaintiff in Memphis. During the relevant period of this lawsuit, most of the items sent to Memphis were delivered by common carrier. Occasionally out-of-state customers will deliver and pick up the equipment themselves in Memphis. If the motor cannot be repaired on site by one of the service technicians in the field,

the equipment is brought to Memphis where the customer has the option of trading in the inoperable motor for a new motor manufactured by Marathon LeTourneau, purchasing a rebuilt motor from Plaintiff's inventory in Memphis, or the customer may have his own motor rebuilt in Memphis and returned to him. It is this last alternative that furnishes the basis for the dispute in this lawsuit. The Commissioner of Revenue does not contend that the initial sale of new or rebuilt motors to customers outside of Tennessee should be subject to the sales tax. However, she does contend that sales tax should be paid on the price of rebuilding equipment that is sent to Memphis for repair and then shipped back to the same customer outside of Tennessee. Prior to May 7, 1982, the Commissioner did not consider this type of transaction to be taxable, but on May 7, 1982, the Director of the Sales and Use Tax Division notified repair service dealers that the Department of Revenue now considered such a transaction to be taxable. The notice indicated that these repair transactions would be taxable "regardless of how it enters or leaves the State."

The Commissioner's position is buttressed by T.C.A. § 67–6–102(13)(F)(iv) which provides that a taxable "sale at retail" shall include "any repair services with respect to any kind of tangible personal property" performed for a consideration. She argues that because the objective of LeTourneau is to restore the customer's own equipment back to an operable condition, that this transaction is a taxable repair service under T.C.A. § 67–6–102(13)(F)(iv). State Sales and Use Tax Rule No. 1320–5–1–.54 (hereinafter Rule 54) provides that "[a]ll charges for repair services and repairs of any kind of tangible personal property ... including all parts and/or labor" are subject to the sales tax. Rule 54 further provides that "repair services" and "repairs" include "work done to preserve or restore [the equipment] to or near the original condition...."

To avoid what seems to be the clear intent of Rule 54 and § 67–6–102(13)(F)(iv),

Plaintiff contends that it is involved in the "rebuilding" or "remanufacturing" of customer's equipment, and therefore these transactions are not taxable as "repair services." It is Plaintiff's position that manufacturing and rebuilding are distinctly different from repairing. This argument is based on Plaintiff's contention that the customer receives equipment that is very different from that which he originally sent to LeTourneau. Plaintiff maintains that the new "rebuilt" motor is superior to a new motor previously manufactured because of the advanced technology incorporated into the rebuilding process. Plaintiff also issues a new one-year warranty on the rebuilt motors, whereas Marathon LeTourneau issues only a six-month or 1,500 hour warranty on its new motors. Each motor is adapted to current specifications and each motor is one hundred percent inspected, whereas new motors are only inspected at random.

In accepting Plaintiff's contention that it "rebuilt" or "remanufactured" rather than "repaired" motors, the chancellor relied on four federal cases that arose under the former federal excise tax. *United States v. J. Leslie Morris Co., Inc.,* 124 F.2d 371 (9th Cir.1941); *United States v. Armature Exchange, Inc.,* 116 F.2d 969 (9th Cir.), *cert. denied,* 313 U.S. 573, 61 S.Ct. 960, 85 L.Ed. 1531 (1941); *Clawson & Bals, Inc. v. Harrison,* 108 F.2d 991 (7th Cir.1939), *cert. denied,* 309 U.S. 685, 60 S.Ct. 808, 84 L.Ed. 1028 (1940); *Broad Motors Co. v. Smith,* 86 F.Supp. 4 (E.D.Penn.1949). None of these cases involved a sales tax resembling that at issue in the present case and therefore are not dispositive of the repair versus rebuild issue.

■ We have no doubt that the motor that the customer receives from Plaintiff is very different from the product the customer tenders in the beginning. It is undoubtedly an improved product which carries a more extensive warranty. However, we find these differences to be of no consequence as far as the tax on repair services is concerned. There is no indication of any "degrees" of repair in T.C.A.

§ 67–6–102(13)(F)(iv) or in any of the rules interpreting that section. The tax on repair services is not limited to minor repairs but includes "*any* repair service with respect to any kind of tangible personal property." The extent to which customers' motors are repaired is not a relevant consideration. The chancellor accordingly erred in holding that a remanufactured or rebuilt unit that carries a new warranty is exempt from the sales and use tax. This Court refuses to judicially create such an exemption into the sales and use tax. While the chancellor was correct in saying that doubts in the construction of the tax statutes must be resolved in favor of the taxpayer, the case at bar involves a claimed exemption from tax. Exemptions will be construed against the taxpayer and must positively appear and will not be implied. *Weaver v. Woods,* 594 S.W.2d 693 (Tenn. 1980); *Morton Pharmaceuticals, Inc. v. MacFarland,* 212 Tenn. 168, 368 S.W.2d 756 (1963).

The second issue in this litigation is whether the taxation of repair services on equipment brought into Tennessee for repair and then shipped out of Tennessee after the repairs are completed is an unconstitutional burden upon interstate commerce in violation of Article 1, § 8, cl. 3 of the United States Constitution (the commerce clause) and T.C.A. § 67–6–313.

■ As the chancellor correctly noted, the sole purpose of T.C.A. § 67–6–313 is to confine the sales and use tax to those subjects which a state is permitted to tax under the commerce clause of the United States Constitution. *Vector Co., Inc. v. Benson,* 491 S.W.2d 612 (Tenn.1973); *Texas Gas Transmission Corp. v. Benson,* 223 Tenn. 279, 444 S.W.2d 137 (1969); *see also* T.C.A. § 67–6–211.

■ It is well-settled that a state tax on interstate commerce is not *per se* unconstitutional and the taxpayer bears the burden of proving his immunity from the tax under the commerce clause. *General Motors Corp. v. Washington,* 377 U.S. 436, 84 S.Ct. 1564, 12 L.Ed.2d 430 (1964); *Norton Co. v. Department of Revenue of Illinois,*

340 U.S. 534, 71 S.Ct. 377, 95 L.Ed. 517 (1951). The United States Supreme Court has recognized that states have a legitimate interest in the compensatory taxation of interstate commerce: "It was not the purpose of the commerce clause to relieve those engaged in interstate commerce from their just share of state tax burdens even though it increases the costs of doing business. 'Even interstate commerce must pay its own way.'" *Western Live Stock v. Bureau of Revenue,* 303 U.S. 250, 254, 58 S.Ct. 546, 548, 82 L.Ed. 823, 827 (1938) (citations omitted). In determining whether a state tax violates the commerce clause, the United States Supreme Court has suggested that the following are factors to be considered: (1) whether the taxed activity has a sufficient nexus with the taxing state; (2) whether the tax discriminates against interstate commerce; (3) whether the tax is fairly apportioned; and (4) whether the tax is related to services rendered by the taxing state. *Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326, *reh. denied,* 430 U.S. 976, 97 S.Ct. 1669, 42 L.Ed.2d 371 (1977). In sum, we must look to the relationship between the taxing state and the activity sought to be taxed and the consequences of the tax on interstate commerce. In the case of a sales tax, a state may require the payment of a tax on sales made to out-of-state customers if the sale itself is sufficiently connected with the taxing state. *McGoldrick v. Berwind-White Coal Mining Co.,* 309 U.S. 33, 60 S.Ct. 388, 84 L.Ed. 565 (1940).

In the case at bar, Plaintiff argues that the transaction is not complete until the product is delivered to the customer out-of-state and therefore taxation on this transaction would be an unconstitutional burden on interstate commerce and violative of T.C.A. § 67–6–313. Plaintiff contends that this is the functional equivalent of an out-of-state sale, which the Commissioner of Revenue does not seek to tax, because delivery is made in another state by the seller or by common carrier. This argument is based in part on the definition of "sale" in T.C.A. § 67–6–102(14)(A) as "transfer of title or possession or both." In order to qualify for sales taxation, Plaintiff argues that the transaction must be viewed as a sale and a sale is not complete until transfer of title or possession. It is Plaintiff's position then that the transfer of possession back to the customer out-of-state is the taxable event.

Plaintiff also relies on Sales and Use Tax Rule 1320–5–1.29 (hereinafter Rule 29) entitled "Nonresident Purchases." That rule provides that if a non-resident purchases property or services from a dealer in Tennessee and the item is delivered to the vendee in Tennessee, the sale is not one of interstate commerce and therefore is fully taxable. It is Plaintiff's position that the negative implication of Rule 29 is that if delivery is effected outside of Tennessee, then the transaction is one of interstate commerce and is thus immune from taxation. The Plaintiff also contends that the Commissioner was acting beyond her authority when by letter she changed her interpretation of the tax consequences for repair service dealers who ship repaired goods out of Tennessee.

The Commissioner argues that the taxable event in question is the performance of repair services in Tennessee and therefore the tax on that service is a permissible exercise of the State's taxing power under the commerce clause and T.C.A. § 67–6–313. Since the repair services are performed at Plaintiff's Memphis facility, the Commissioner contends that there is a sufficient local incident on which to base the tax. It is the Commissioner's position that the taxable event, the repair service, is defined by T.C.A. § 67–6–102(13)(F)(iv) as "[t]he performing for a consideration of any repair services with respect to any kind of tangible personal property." The Commissioner argues that there is a distinction between sales to out-of-state customers, which are not taxable, and services performed in the taxing state for out-of-state customers, which are taxable.

 We are of the opinion that the imposition of sales taxes on services per-

formed within the state on products later placed into interstate commerce is not a violation of the commerce clause of the United States Constitution or T.C.A. § 67–6–313. In the case at bar there exists a sufficiently substantial connection with Tennessee to justify imposition of the sales tax on repair work performed by Plaintiff in Tennessee. The goods came to rest in Tennessee, service was performed in Tennessee and the transaction was taxed as a service and not a sale.

Case law fully supports the distinction the Commissioner draws between sales to out-of-state customers and services performed in the taxing state for an out-of-state customer. The United States Supreme Court has said that "a State may tax the proceeds from services performed in the taxing state, even though they are sold to purchasers in another state." *Evco v. Jones*, 409 U.S. 91, 93 S.Ct. 349, 350, 34 L.Ed.2d 325, 328 (1972). In *Department of Revenue v. Ingram-Richardson Mfg. Co.*, 313 U.S. 252, 61 S.Ct. 866, 85 L.Ed. 1313 (1941), the Court upheld a gross receipts tax imposed on a taxpayer engaged in the process of enameling metal parts on equipment belonging to customers out-of-state. The Court accepted the finding that this was a tax on services, not a tax on the initial sale of finished products and found irrelevant the fact that the service was performed for out-of-state customers. The Court rejected the argument that the transaction was not taxable because it included interstate transportation of the finished products. Interstate transportation was "but incident" to the local activity. 313 U.S. at 255, 61 S.Ct. at 868, 85 L.Ed. at 1316. We reject Plaintiff's argument that *Ingram-Richardson* is not applicable because it involved a gross receipts tax rather than a sales tax. In *International Harvester Co. v. Department of the Treasury*, 322 U.S. 340, 349, 64 S.Ct. 1019, 1023, 88 L.Ed. 1313, 1319 (1944), the Court stressed that the "local activities" involved were as adequate to support a gross receipts tax as they would be to support a sales tax. We look to the practical effect of a tax and not the label attached to it.

We are unable to see how the fact that delivery is made out-of-state changes the constitutional analysis. Plaintiff's argument that delivery is a fundamental component of the transaction is without merit. Our scheme of taxation is meant to encompass more than simple title to and possession of personal property. *Woods v. M.J. Kelley Co.*, 592 S.W.2d 567 (Tenn.1980), *cert. denied*, 447 U.S. 905, 100 S.Ct. 2987, 64 L.Ed.2d 854 (1980). The tax imposed in this case is a tax on property that has "come to rest in this state and has become a part of the mass of property in this state." T.C.A. § 67–6–211. Plaintiff argues that our decision in *Serodino, Inc. v. Woods*, 568 S.W.2d 610 (Tenn.1978) is not applicable to the present dispute because in *Serodino* the taxpayer took delivery in Tennessee whereas LeTourneau ships the equipment back to the customer out-of-state via interstate commerce. We believe this is a distinction without a difference. There is nothing in Justice Harbison's opinion in *Serodino* to indicate that the fact that the product was delivered to the taxpayer in Tennessee who then placed it into interstate commerce had any significance whatsoever. In noting that the actual sale and use of the parts by the taxpayer occurred in Tennessee, the Court observed:

> The fact that the barges will be placed back into interstate commerce and will be used by their respective owners outside of Tennessee does not prevent the imposition of the tax at the place and time when the taxpayer's services and repairs are performed.

568 S.W.2d at 613.

There is no indication whatsoever that whether it is the repair dealer or the customer who places the goods into interstate commerce at a later time has any significance. The taxable event is the rendering of repair services in Tennessee. What happens after the repairs are performed is of no consequence as far as the imposition of sales tax is concerned. As the United States Supreme Court said in *Department of Treasury v. Ingram-Richardson Mfg.*

*Co.,* 313 U.S. 252, 61 S.Ct. 686, 85 L.Ed. 1313 (1941), which also involved the post-service shipment by the taxpayer to the customer out-of-state, "The transportation ... to and from Indiana [was] but incident to the intrastate business...." *Id.* at 255, 61 S.Ct. at 868, 85 L.Ed. at 1316. *See also Western Live Stock v. Bureau of Revenue, supra.*

The cases of *Young Sales Corp. v. Benson,* 244 Tenn. 88, 450 S.W.2d 574 (1970), and *Beecham Laboratories v. Woods,* 569 S.W.2d 456 (Tenn.1978), relied upon by Plaintiff, have no application here. They involved the imposition of a use tax on items merely held in the state for export to other states. No taxable service was performed on the goods while they were held in Tennessee. *Service Merchandise Co. v. Tidwell,* 529 S.W.2d 215 (Tenn.1975), is similarly inapposite. Goods were continuously in transit in interstate commerce and never "came to rest" in Tennessee. In the case at bar the goods came to rest in Tennessee where a taxable service was performed and taxed as a service. The goods here were out of the stream of commerce.

No burden upon or discrimination against interstate commerce is shown in this case. The tax sought to be applied is applied to all repair services, whether the goods arrived in Tennessee via interstate commerce or otherwise. Furthermore, the Plaintiff has not met its burden of showing the risk of double taxation. The mere possibility of future double taxation is constitutionally insufficient. *See General Motors Corp. v. Washington,* 377 U.S. 436, 84 S.Ct. 1564, 12 L.Ed.2d 430 (1964). The repair occurs only in Tennessee. On this record we are unable to find a real risk of double taxation.

Plaintiff's argument that the Commissioner acted beyond her authority in changing the interpretation of the tax consequences for repair service dealers by the letter of December 7, 1982, is without merit. We have held that no estoppel works against the Commissioner by virtue of a previous erroneous interpretation of a taxing statute. *Memphis Shoppers News v.*

*Woods,* 584 S.W.2d 196 (Tenn.1979). The Department was within its authority when it changed its interpretation of the tax consequences for repair service dealers. Plaintiff and other repair service dealers were given actual notice of the change. Nothing more was required.

In conclusion we find the tax imposed on Plaintiff to be a constitutional exercise of the State's taxing power. The tax bears a substantial relationship to activities conducted in Tennessee and is not a burden on or a discrimination against interstate commerce.

Finding both issues in this case in favor of the Commissioner of Revenue, we therefore reverse the judgment of the trial court. The cause of action is accordingly dismissed with costs on appeal taxed to the Plaintiff.

COOPER, C.J., and FONES, BROCK and HARBISON, JJ., concur.