**SCHOLL, INC.; Displaycraft of Chattanooga, A Partnership Composed of Odie Barnes and Hugh Hannah; and Displaycraft of Chattanooga, Inc., A Tennessee Corporation, Appellants,**

v.

**Donald W. JACKSON, Commissioner of Revenue, State of Tennessee, Appellee.**

**SCHOLL, INC.; Display Fixture, A Partnership composed of Eric E. Maurer and Eugene H. Maurer; and Display Fixture, Inc., A Tennessee Corporation, Appellants,**

v.

**Donald W. JACKSON, Commissioner of Revenue, State of Tennessee, Appellee.**

Supreme Court of Tennessee,
at Nashville.

May 26, 1987.

**894**

J. Richard Buchignani, Daniel K. Evans, Memphis, for appellants.

W.J. Michael Cody, Atty. Gen., H. Rowan Leathers, III, Asst. Atty. Gen., Nashville, for appellee.

OPINION

HARBISON, Justice.

Appellants paid under protest and sued for refund of sales taxes collected under the Tennessee Retailers' Sales Tax Act, T.C.A. §§ 67–6–101 to 67–6–712. Appellants claimed that the transactions involved were exempt as sales for resale or as part of interstate commerce. The Chancellor dismissed the action, and we affirm.

There is no dispute as to the material facts. The taxpayers in the case are Dis-

playcraft Inc. of Chattanooga, a corporation and Display Fixture, a partnership, and their related business affiliates. They manufactured display cabinets and sold them to Scholl, Inc., a large manufacturer and distributor of foot care products. Scholl sold its foot care products to retail outlets under the trademark, "Dr. Scholl". It offered its retailers display racks with the purchase of various sized "assortments" of its products, and it made no additional charge to its retailers for the display racks themselves. These were manufactured in various sizes. Unless a retailer purchased one of the predetermined assortments, it was not furnished or provided with a display rack.

The display racks were designed to enable the retailers to store and sell the foot care merchandise conveniently and attractively.

While the sales taxes in these cases were assessed against the manufacturers, Scholl, Inc., agreed to indemnify the latter. There is no question but that the sales taxes were paid under protest and suit timely filed for refund.

Scholl, Inc., at no time furnished the manufacturers with any kind of resale certificate, required by statute in order that a transaction qualify as exempt from taxation as a retail sale. The display racks were all manufactured in Tennessee by the manufacturers and delivered to Scholl, Inc., in Tennessee. Like the Chancellor, we find no basis for any exemption on the basis that the display racks were in interstate commerce or that they were manufactured for export from the state so as to qualify for the statutory exemption provided in T.C.A. § 67–6–313(a).

The primary insistence of the appellants is that the manufacture and sales of display racks to Scholl, Inc., were exempt as sales for resale. This exemption is governed by statutes and regulations which have not been met by any of the parties.

T.C.A. § 67–6–102(13)(A) provides:

" 'Retail sales' or a 'sale at retail' means a sale to a consumer or to any person for

any purpose other than for resale in the form of tangible personal property, and shall mean and include all such transactions as the commissioner of revenue upon investigation finds to be in lieu of sales; *provided that sales for resale must be in strict compliance with rules and regulations. Any dealer making a sale for resale which is not in strict compliance with rules and regulations shall himself be liable for and pay the tax; ...*" (emphasis added).

The "dealer" claiming the exemption in this case is Displaycraft. Among the rules and regulations with which it is required strictly to comply are the following:

"1320–5–1–.62 SALES FOR RESALE.

"(1) 'Sales for resale' means those whereby a supplier of materials, supplies, equipment and services makes such tangible personal property or services available to legitimate dealers *actually selling such property or services as such*, or which becomes an industrial material or supply in a manufacturing or processing operation." (Emphasis added).

■ None of the distributors or retailers acquiring display cases and fixtures from Scholl, Inc., pay any money to Scholl, Inc., for them, and Scholl, Inc., is not engaged in the business of "actually selling such property" to its distributors. These are nothing more than sales promotion or advertising items purchased and paid for by Scholl and given to distributors desiring to have them for such purposes.

The regulations further provide:

"1320–5–1–.68 RESALE CERTIFICATE.

"(1) Dealers shall require certificates of resale for all tangible personal property sold or services rendered in this State, for the purpose of resale, and such certificates must be available at the establishment of the dealer for ready inspection and comparison with the deductions claimed on monthly Sales and Use Tax returns. A dealer duly registered under the provisions of the Sales Tax Act and continually engaged in the business of selling tangible personal property or taxable services at retail may present evidence to his wholesaler or supplier as to his registration as a retailer, and shall not be required to execute additional certificates of resale for individual purchases as long as there is no change in the character of his operation, and the purchases are of tangible personal property or taxable services of a sort usually purchased by the purchaser for resale.

"(2) All sales for resale which are not supported by resale certificates properly executed shall be deemed retail sales, and the dealer held liable for the tax unless the same comes within the exception mentioned as part of paragraph (1) of this rule."

The record does not disclose that Displaycraft ever received or required any sort of certificate of resale from Scholl, Inc. Displaycraft has not complied with the rules and regulations and clearly cannot claim the exemption contended for in this case. If Scholl, Inc., were in fact a wholesaler, and not a retail purchaser, it would have been required to furnish Displaycraft a resale certificate.

There is no showing that Scholl ever even attempted to comply with the requirements of the rules and regulations with regard to the duties of wholesalers. T.C.A. § 67–6–523(c) provides:

"In order to aid in the administration and enforcement of the provisions of this chapter, and collect all of the tax imposed by this chapter, all wholesale dealers and jobbers in this state are required to keep a record of all sales of tangible personal property made in this state, whether such sales be for cash or on terms of credit. The record required to be kept by all wholesale dealers and jobbers shall contain and include the name and address of the purchaser, the date of the purchase, the article purchased, and the price at which the article is sold to the purchaser. These records shall be kept for a period of three (3) years and shall be open to the inspection of the commissioner, or his duly authorized assistants at all reasonable hours. The

failure of any wholesale dealer or jobber in this state to keep such records, or the failure of any wholesale dealer or jobber in this state to permit an inspection of such records by the commissioner as aforesaid, shall be deemed a misdemeanor and upon conviction thereof the wholesale dealer or jobber shall be subject to a fine...."

In our opinion neither Displaycraft nor Scholl, Inc. has established any entitlement to exemption for the sales from the former to the latter.

Despite the foregoing, appellants insist that they are entitled to the exemption under the holding of this Court in *Morton Pharmaceuticals, Inc. v. MacFarland,* 212 Tenn. 168, 368 S.W.2d 756 (1963).

In that case the taxpayer manufactured pharmaceutical products and sold them to doctors and hospitals. It also purchased nonpharmaceutical products from outside suppliers to be given to its customers as gifts. It advertised its pharmaceuticals in two separate catalogues, in one catalogue offering pharmaceuticals for a stated price and in a second catalogue offering the same items for a higher price. Under the listings in the second catalogue the customers received a credit toward gift items. The cost of these nonpharmaceutical items to Morton was treated by it as a selling expense. The Supreme Court concluded that the cost of the nondrug items was included in the price of the pharmaceuticals sold to the doctors and hospitals, making the transfer of these items a sale, even though the items were advertised as gifts.

However, in our opinion, the present case is distinguishable. Although appellants claim that the cost of the display racks is part of the cost of goods sold to the retailer, a witness for appellants admitted that the retailer is charged the same price for a pre-assortment of products with a display cabinet as a retailer purchasing the same assortment without it.

This was not true in the *Morton* case. There the pharmaceutical company charged a higher price to those retailers which received the premium merchandise. The Chancellor found as a fact that Morton was actually selling its products to its customers, and the Supreme Court upheld that factual determination.

In the present case the Chancellor found that there was no sale involved, and in our opinion the evidence does not preponderate against that finding, since neither Scholl nor Displaycraft complied with the statutes and regulations governing sales for resale, and Scholl made no differentiation in the price paid by a retailer to Scholl, Inc., for the products, such as foot powder, etc., whether the retailer did or did not receive a display rack from Scholl.

The briefs of counsel do not disclose whether the rules and regulations in force in 1963, at the time of the *Morton Pharmaceuticals* case, *supra,* were the same as those now in force or not. They were only briefly alluded to in the opinion of the Court in that case. In our opinion the current statutes and regulations both authorize and require imposition of the tax.

The present case is much more similar to *Nashville Mobilphone Co. v. Woods,* 655 S.W.2d 934 (Tenn.1983), than to *Morton Pharmaceuticals, supra.* In the *Nashville Mobilphone* case the taxpayer purchased radio phones and signalling equipment which it then leased to its subscribers and customers. The taxpayer contended that its purchases of this equipment were not retail sales but were "sales for resale" to the customers and subscribers. The Chancellor held otherwise, and this Court affirmed.

Cited in the opinion were numerous cases involving sales of equipment to hotels, airlines, bowling alleys and the like, where all or part of such equipment was later leased or rented to customers as part of the charges for services.

There the Court said:

"The general theme of all of these cases is that when the primary function and purpose of the taxpayer is to provide services, the ownership, use and maintenance of certain types of personal property and equipment are necessary in order to enable it to furnish the services, so that the taxpayer, not its customer, is the ultimate user or consumer within the meaning of sales and use tax statutes." 655 S.W.2d at 937.

In the present case the use of the display cabinets by Scholl, Inc., was for its own purposes and to promote its own products. It made no charge to its retailers for these fixtures. It furnished them "a free cabinet" upon purchase of other products according to appellants' answers to interrogatories. While it is true that the cost of the racks was included as a part of the cost of the products, so, presumably, were all of its other costs of promotion and advertising.

Appellants have not carried the requisite burden of proof to establish their claims of exemption. The judgment of the Chancellor is affirmed at the cost of appellants.

BROCK, C.J., DROWOTA, J., and GREER, Special Justice, concur.

FONES, J., not participating.